**IN RE: THE ESTATE OF WILLIAM B. HEWITT, Deceased**

13 So. (2nd) 904         June Term, 1943
June 8, 1943         Division **B**

138

*Carey & Harrison,* for appellant.

*Joe W. Davis,* for Walter Stamper, as administrator of the Estate of William B. Hewett, deceased.

*Fred T. Saussy,* for Appellee Lila Colwell.

BROWN, J.:

This is a case of first impression in this jurisdiction. It concerns the degree or extent of inheritability of an adopted child as regards the estates of lineal or collateral kindred of the adoptive parent or parents.

William B. Hewett died May 14, 1941. He had made a will leaving all of his estate to his wife, but she died shortly before he did. So it is agreed that in effect he died intestate. He left surviving him no father or mother, no child or children, no brother or sister, nor the descendants of a deceased brother or sister, no grandparents and no uncles or aunts. So far as known to the trial court, his surviving kindred consisted of two first cousins, Laura Conklin and Etta Ferguson, the appellants herein. Then there was Lila Colwell, the adopted daughter of William B. Colwell, a deceased first cousin of William B. Hewett, who claimed an interest in William B. Hewett's Estate, i.e., that she was entitled to recover from the assets of the Hewett estate the same interest which her adoptive father would have been entitled to had he been living at the time of the death of William B. Hewett.

William B. Colwell and Mrs. Etta Ferguson were the children of Thankful Hewett Colwell, who was a paternal aunt of William B. Hewett. Mrs. Laura Conklin is the daughter of another paternal aunt of William B. Hewett, whose name

was Sophronia Hewett. If these two aunts had been living at the time of Wliliam B. Hewett's death, his estate would have descended to them under Sec. 24 of the Probate Act of 1933, but they both predeceased William B. Colwell and he predeceased William B. Hewett.

The probate judge, after taking testimony as to the facts, entered an order denying Lila Colwell's claim, and on appeal the circuit court reversed said order. The judges of both these courts carefully considered this controversy, as shown by their very persuasive opinions, but, as above shown, they reached opposite conclusions. Laura Conklin and Etta Ferguson appealed from the circuit court's judgment to this court. On this appeal we have the benefit of the well prepared briefs of counsel for the respective parties.

The question involved is not free from difficulty, as is often the case when dealing with questions turning upon the interpretation of statutory provisions. In the light of the facts of this case the controlling question might be briefly stated in these words: Is the adopted daughter of William B. Colwell, the deceased first cousin of William B. Hewett, entitled to share in the estate of William B. Hewett to the same extent that her adoptive father would have shared had he been living at the time of William B. Hewett's death?

Our old adoption statute (ch. 3594, Acts of 1885; sections 5076-5081 C.G.L.; Sections 72.01-72.06 Fla. Stats. 1941) contains a provision to the effect that any child adopted thereunder "shall be declared the child and heir-at-law of the person applying for his adoption." The same rule was made to apply to a child legally adopted in another state. Sec. 5488 C.G.L. The Probate Act of 1933, Section 31, now appearing as Section 731.30 Fla. Stats. 1941, being the last expression of the legislative will, is controlling here. It reads as follows:

"Adopted Child—An adopted child, whether adopted under the laws of Florida or any other state or country, shall be an heir at law and for the purpose of inheritance be regarded as a lineal descendant of its adopting parents and the adopting parents shall inherit from the adopted child. Such

adopted child shall inherit the estate of its blood parents, but such blood parents shall not inherit from such adopted child."

Section 24, subsection 6(b), of the Probate Act of 1933, being subsection 6(b) of section 731.23 of Fla. Stats. 1941, reads:

"*Order of Succession.* The real and personal property of an intestate shall descend and be distributed as follows: . . .

"6(b) If there be no grandfather or grandmother, to the uncles and aunts and the descendants of such of them as may be deceased."

William B. Colwell, the adoptive father of claimant Lila Colwell, was the son of a deceased aunt of William B. Hewitt, and admittedly a "descendant" of such aunt within the plain meaning of the statute. The question here is whether upon the death of Hewett, William B. Colwell's adopted daughter, he having predeceased William B. Hewett, was also a "descendant" of Hewett's deceased aunt. Manifestly she was not, unless Section 31 of the Probate Act, now Section 731.30 of Fla. Stats. 1941, made her so.

That Section of the statute provides that an adopted child "shall be an heir at law and for the purpose of inheritance be regarded as a lineal descendant *of its adopting parents, etc.* (Emphasis supplied.) So the statute does not *expressly* make the adopted child the heir at law or lineal descendant of the *ancestors or blood kindred* of the adoptive parents. Can we reasonably hold that it impliedly does so? We think not.

It is argued that an adopted child could not "for the purpose of inheritance be regarded as a lineal descendant of its adopting parents" without also being regarded as the lineal descendant of its adopting parents' ancestors, but the statute says nothing about the adopting parents' ancestors and we cannot add anything to the statute which is not expressly stated therein or which is not necessarily implied by the language used. Can it be said that implication contended for is necessarily and reasonably implied from the language used?

The learned Circuit Judge thought so. His view was that the above quoted Section 31 of the Probate Act, insofar as an adopted child is concerned, was a legislative definition of

the word "descendants" as used in paragraph 6 of subsection (b), and wherever such word appeared in said Section 24, thus placing an adopted child in exactly the same position for purposes of inheritance as a natural child would have occupied. He also called attention to the fact that the words "for the purpose of inheritance" is not qualified by any such words as "from its adopting parents," but that the word "inheritance" is used in an unrestricted sense. We agree that Sections 24 and 31 (731.23 and 731.30 Fla. Stats. 1941) should be construed in pari materia, but those provisions of Section 24 (the general statute of descents and distributions) which limit the distribution of inheritances to "descendants" must not be changed by anything contained in Section 31 except insofar as the language of that Section, either expressly or by necessary implication requires. We think that the use of the words, "and for the purpose of inheritance be regarded as a lineal descendant of its adopting parents" might well have been prompted by the words immediately following, which are, "and the adopting parents shall inherit from the adopted child," which would only be appropriate if the child be regarded "as a lineal descendant of the adopting parents." This purpose is further shown by the next sentence, which provides that while the adopted child shall also inherit from its blood parents, the "blood parents shall not inherit from such adopted child." We might well say that what the Legislature mainly had in mind in drafting this Section was the extent and quality of an adopted child's inheritance from both its adopting parents and its natural parents, and the reciprocal right of inheritance from the adopted child—which latter right was given exclusively to the adopting parents, just the same as if the adopted child were "for the purpose of inheritance" regarded "as the lineal descendant of its adopting parents," which adopting parents assume the burden and legal duty of raising, training, educating and supporting the adopted child, and thus relieving the blood parents of this burden and expense.

This statute is very liberal in its provisions in behalf of the adopted child. Such child inherits from its adopting parents as if it were their own natural child, and likewise in-

herits from its natural parents. Why should the Legislature be *construed* to have gone further and intended, by court-imposed implication, to give the adopted child the right to inherit from the adopting parents' ancestors or other blood kin? The Legislature should not be construed to have intended this unless the language of the statute makes it plain that such was the legislative intent—which we do not think it does. The statute says: "An adopted child . . . shall be an heir at law and for the purpose of inheritance be regarded as a lineal descendant of *its adopting parents.* . . ." So the words "heir at law," and "for the purpose of inheritance shall be regarded as a lineal descendant" are all limited and qualified by the words "of its adopting parents." We would be going too far if we should expend the language of this sentence to read: "of its adopting parents and their ancestors."

Statutes of descent or succession usually place emphasis upon kinship as established by the blood stream—hence the frequent use of the word "descendants" in our own statute of descents and distributions, now Section 731.23 Fla. Stats. 1941. The word "descendants" connotes those persons who are in the blood stream of the ancestor. And when strangers to the blood come into the family by legal adoption they have only such rights of inheritance as are given them by statute.

A descendant, says Webster, is one who descends, "as offspring, however remotely." The Century Dictionary defines the word as "an individual proceeding from an ancestor in any degree, issue; offspring, near or remote," and Worcester says it means "the offspring of an ancestor; progeny." See Words & Phrases, Permanent Edition No. 12 p. 220.

In 1 Am. Jur. 662, Sec. 63, it is said: "The right of an adopted child to inherit as an heir of the relatives or descendants of the adoptive parents depends entirely upon statutory or constitutional provisions. And while these statutes, though similar, have not received a uniform construction, yet it is the general view that there is not conferred upon the child a right to inherit from the lineal or collateral kindred of the adoptive parent unless the language of the statutes is clearly to that effect."

See also 2 C.J.S., 455, and a very comprehensive review

of the decisions in an annotation in 38 A.L.R., beginning at page 8, This annotation follows an interesting opinion in the case of Re Estate of Jos. W. Bradley, 38 A.L.R. 1, (Wis.) 201 N.W. 973. In that case it was held that a statute which interrupts the natural course of the descent of property should be strictly construed.

In Warren v. Prescott, 84 Me. 483, 24 Atl. 948, 17 L.R.A. 435, the court went so far as to hold that although by adoption, the adopters can make for themselves an heir, they cannot thus make one for their kindred. And in Merritt v. Morton, (Ky.) 136 S.W. 133, 33 L.R.A. (N.S.) 139, it was held as the adopted child's right to inherit rested upon contract, only those who were parties to the contract are bound by it.

One of the general lines of reasoning upon which many of the decisions are based is expressed in Phillips v. McConica, 59 Oh. St. 1, 9; 51 N.W. 445; 69 Am. S.R. 753, as follows:

"The ancestors of the adopter are presumed to know their relatives by blood, and to have them in mind in the distribution of their estates, either by will or descent, but they cannot be expected to keep informed as to adoption proceedings in the Probate Courts of the counties of this State; and to allow an adopted child to inherit from the ancestors of the adopter would often put property into the hands of unheard of adopted children, contrary to the wishes and expectations of such ancestors."

See also, on this general question, the opinion of Justice Lamm in Hockaday v. Lynn, (Mo.) 98 S.W. 585, 8 L.R.A. (N.S). 117, a very scholarly historical treatment of this subject of adoption and its effect on the general laws of descent and distribution; also Helms, Admr. v. Elliott, 10 L.R.A. 535; Shoemaker v. Newman, 65 Fed. (2nd) 208, 89 A.L.R. 1034; Ketell v. Baxter, 100 N.Y. Supp. 529 (cited and quoted from an annotation in 38 A.L.R., p. 9, wherein many other cases are reviewed).

It will have been noted from the statement of facts herein that William Colwell, the adoptive parent of Lila Colwell, never did have any interest in the estate of William Hewett, having died prior to Hewett's death. So it is that if Lila

Colwell is to have a share in Hewett's estate, she can only acquire it upon the theory that she is *a descendant* of Thankful Hewett Colwell, the deceased aunt of Hewett and who had departed this life before Hewett died.  As above indicated, the applicable provisions of our Florida statutes do not support this theory.  They do recognize the relationship of father and daughter, set up by the adoption proceedings, between William Colwell and Lila Colwell, but they do not make Lila Colwell the granddaughter of Thankful Hewett Colwell, to whom she was entirely unrelated.  But by this decision of the case Lila Colwell is losing nothing, since neither she nor her adoptive father, nor her adoptive father's mother, ever had any interest in William B. Hewett's estate, both of the latter having predeceased him.

For these reasons, the judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with the above opinion.

BUFORD, C. J., THOMAS and SEBRING, JJ., concur.