In re the ESTATE OF Robert W.
DAVID, Deceased, Alan W. Blixt
and Gerald R. Blixt, Petitioners,

v.

Lillian SNELSON, Respondent.

No. 88SC362.

Supreme Court of Colorado,
En Banc.

July 17, 1989.

Harold L. Davison, Aurora, for petitioners.

Hurth, Yeager & Sisk, Fred Y. Boyer, Boulder, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to resolve a conflict between two decisions of the court of appeals. In *In re Estate of David*, 762 P.2d 745 (Colo.App.1988), a divided panel of the court of appeals held that children adopted in 1961 were not entitled to inherit from their natural father who died intestate in 1986. In a case decided the same day, *In re Estate of Bomareto*, 757 P.2d 1135 (Colo.App.1988), the court of appeals held that a child adopted in 1960 was entitled to inherit from her natural father who died intestate in 1982. We affirm the judgment of the court of appeals in *David*. We disapprove of the reasoning of the court of appeals in *Bomareto*.

## I.

The facts are not in dispute. Alan W. Blixt (Alan) and Gerald R. Blixt (Gerald) (collectively, the sons) are the natural children of Robert W. David (David). The sons were adopted in August 1961 by James J. Blixt, the second husband of their natural mother, in a step-parent adoption.

David died intestate in 1986. He left no spouse. In addition to his sons, he was survived by three brothers, a fourth deceased brother's children, and three sisters (collectively, the siblings). The siblings filed a petition in Adams County District Court for adjudication of intestacy and appointment of David's sister, Lillian R. Snelson, as personal representative of the estate. The sons opposed Snelson's appointment. They sought to have Alan appointed personal representative, arguing that the General Assembly in 1977 amended the 1961 inheritance law to permit adopted children to inherit from their natural parents.

The district court held that Alan had no right to be appointed personal representative of David's estate because the sons' right to inherit from David was divested when they were adopted in August 1961. The court examined the language of the sons' adoption decrees as well as the adoption laws in effect in August 1961. It concluded that the sons' adoption decrees incorporated by reference the law in effect at the time of adoption. It also noted that an inheritance statute in effect since May 1961 prohibited adopted children from inheriting from natural parents. As a result, it concluded that the effect of the August 1961 adoptions was to divest the sons of the right to inherit from their natural father.

A divided panel of the court of appeals affirmed the judgment of the district court. The majority recognized that the heirs of an estate are determined by interpreting the law of inheritance existing at the date of the intestate's death. *David*, 762 P.2d at 745–46 (citing *Estate of Warr*, 111 Colo. 85, 89, 137 P.2d 408, 410 (1943)). It interpreted the law of intestate succession in effect at David's death, section 15–11–109(1)(a), 6B C.R.S. (1987), as requiring an examination of the inheritance and adoption laws existing at the time of adoption. Although it agreed with the trial court that the 1961 adoption decrees did not expressly divest the sons of their right to inherit from David, the majority concluded from its review of the inheritance law in effect in August 1961 that the sons' right to inherit from their natural father was divested at the time of their adoption. *Id.* at 745.

Judge Hume dissented. He believed the August 1961 adoption decrees neither divested the sons of the right to inherit from their natural father nor incorporated by reference the inheritance statute in effect in August 1961. *Id.* (Hume, J., dissenting). He interpreted section 15–11–109 as unequivocally granting to adopted children the right to inherit from their natural parents. He concluded that the majority erred in holding that section 15–11–109 requires a probate court to examine the inheritance laws existing at the time of adoption. *Id.* at 747 (Hume, J., dissenting).

The day *David* was decided, a different panel unanimously concluded in *In re Estate of Bomareto,* 757 P.2d 1135 (Colo.App. 1988), that a child adopted in 1960 could inherit from her natural father who died intestate in 1982. As in *David,* the court of appeals found the applicable inheritance law to be section 15–11–109(1)(a). The court apparently interpreted section 15–11–109(1)(a) as permitting an examination of the law in effect at the time of adoption only if incorporated by reference into the final decree of adoption.[1] It examined the 1960 adoption decree and found that the decree terminated the adopted child's *obligations* to her natural parents but not her *right* to inherit from her natural parents. *Id.* at 1137. The court of appeals held that the 1960 adoption decree incorporated the language of section 4–1–11, an adoption statute, but not other laws in effect at the time. It concluded that section 4–1–11 did not state that the right to inherit from a natural parent is divested upon adoption and reasoned that the right to inherit is not a "parental obligation" within the meaning of section 4–1–11 but "a legal right which accrues automatically to the child upon the decedent's death." *Id.* Because the 1960 adoption decree did not terminate the

child's right to inherit from her natural parents, reasoned the court of appeals, the adopted child remained the heir of her natural father and took his estate by intestate succession in 1982.

Like the *David* court, the *Bomareto* court attempted to distinguish the two cases, but did so on different grounds. The *David* court concluded that the distinguishing factor was the inheritance law in effect at the time of adoption: the 1960 inheritance law applicable in *Bomareto* permitted adopted children to inherit from their natural parents while the 1961 inheritance law applicable in *David* prohibited adopted children from inheriting from their natural parents. *David,* op. at 814. The *Bomareto* court concluded that the distinguishing factor was the presence or absence of an adoption statute incorporated into the adoption decree: the adoption decree in *Bomareto* incorporated the language of section 4–1–11 while the adoption decree in *David* did not. *Bomareto,* 757 P.2d at 1137.

Certiorari review was sought in *David* but not in *Bomareto.*

## II.

■ Whether children may inherit by intestate succession from natural parents whose parental rights and obligations were terminated by final decree of adoption is a question of first impression in Colorado.

■ The right of adopted children to inherit is determined by the inheritance laws in effect when the intestate died. *Estate of Warr,* 111 Colo. 85, 89, 137 P.2d 408, 410 (1943). The inheritance law in effect when David died was section 15–11–109(1)(a). Section 15–11–109(1)(a) provides:

(1) If, for purposes of intestate succession, a relationship of parent and child

---

1. The court of appeals in *Bomareto* did not hold expressly that section 15–11–109(1)(a) permits an examination of the law in effect at the time of adoption only if incorporated into the adoption decree. This holding can be implied, however, from two facts. First, the court of appeals in *Bomareto* stated that the "dispositive question" was "whether this language [in the adoption decree] divested [the adopted child] of her right to inherit from her natural father." *Bo-*

*mareto,* 757 P.2d at 1137. Second, Judge Hume in dissent in *David* stated that the inheritance statute in effect when the sons were adopted could not be relied upon to divest them of the right to inherit from their natural father because the August 1961 adoption decrees did not "purport to incorporate by reference the predecessor statute" to section 15–11–109(1)(a). *David,* 762 P.2d at 746 (Hume, J., dissenting).

must be established to determine succession by, through, or from a person:

(a) An adopted person is the child of an adopting parent and of the adopted person's natural parents insofar as the rights of all persons to inherit from or through the adopted person and the right of the adopted person to inherit from or through any person are concerned, *except to the extent that inheritance rights have been divested by* a final order of relinquishment, *a final decree of adoption,* or an order terminating the parent-child relationship *under the laws of this state or of any other jurisdiction.*

6B C.R.S. (1987) (emphasis added). Section 15–11–109(1)(a) therefore creates a general rule and an exception. The general rule is that adopted children may inherit from or through their natural parents as well as their adopted parents. The exception to this rule occurs when the right to inherit from natural parents is divested. Whether the sons are entitled to inherit from David therefore depends on whether their right to inherit was divested when they were adopted in August 1961. This in turn depends on the meaning of the statutory phrase "except to the extent that inheritance rights have been divested by ... a final decree of adoption ... under the laws of this state or of any other jurisdiction." [2]

Both parties argue for different reasons that the statutory phrase "except to the extent that inheritance rights have been divested by ... a final decree of adoption" means that the law in effect at the time of adoption has no bearing on whether adopted children may inherit from their natural parents. The sons argue that this statutory phrase means that a probate court in determining an intestate's heirs may consider only the inheritance laws in effect at the time of the intestate's death and the language of the adoption decree,

but may not consider other laws in effect at the time of the adoption unless the adoption decree incorporates these laws by reference.

Snelson argues that this statutory phrase means that a probate court in determining an intestate's heirs after July 1977, when section 15–11–109(1)(a) became effective, must conclude that adopted children are divested of the right to inherit from their natural parents regardless of the law in effect at the time of adoption. She bases this conclusion on a reading of section 15–11–109(1)(a) of the probate code in conjunction with section 19–3–608(1), 8B C.R.S. (1988 Supp.), and section 19–5–104(4), 8B C.R.S. (1988 Supp.), of the children's code. She contends that these statutes read *in pari materia* demonstrate a legislative intent to divest all adopted children of the right to inherit from a natural parent regardless of the law in effect at the time of adoption.

We find neither argument persuasive and hold that the right of adopted children to inherit from their natural parents depends on the adoption and inheritance laws in effect at the time of adoption.

## A.

We agree with the trial court and the court of appeals that the August 1961 adoption decrees did not expressly divest the sons of the right to inherit from David. The decrees ordered David to be "hereby divested of all legal rights and obligations in respect to [Alan and Gerald] and [Alan and Gerald] shall be free from all legal obligations of obedience and maintenance in respect to [David]." This language is virtually identical to section 4–1–11(2), the 1953 version of section 19–5–211(2), and described the legal effects of a final decree of adoption on the natural parents and the adopted children.[3] This language in the

---

**2.** Neither the parties nor the court of appeals in *David* focused on the phrase "under the laws of this state or of any other jurisdiction."

**3.** Section 4–1–11(2) provided:
The natural parents shall be divested of all legal rights and obligations in respect to the foster child, and the adopted child shall be

free from all legal obligations of obedience and maintenance in respect to the natural parents. Nothing herein contained shall be construed to divest any natural parent of any legal right or obligation where the adopting parent is a step-parent and is married to said natural parent.

sons' 1961 adoption decrees is also identical to the language in the 1960 adoption decree interpreted in *Bomareto.* The August 1961 adoption decrees neither stated that the sons' right to inherit was divested by the adoption nor provided that the sons were divested of legal rights with respect to David.

### B.

■ Regardless of whether the language of the adoption decrees was sufficiently broad to incorporate by reference the law in effect in August 1961, however, we believe the intent of the General Assembly in enacting section 15–11–109(1)(a) was to require a probate court to consider not only the language of the adoption decree but also the inheritance law in effect at the time of adoption. Our task in construing statutes is to ascertain and effectuate the intent of the General Assembly. *In re R.C.,* 775 P.2d 27, 29 (Colo.1989); *Ingram v. Cooper,* 698 P.2d 1314, 1315 (Colo.1985). Where the meaning is clear and no ambiguity would result, the statute must be interpreted as written without resort to other rules of statutory construction. *People v. District Court,* 713 P.2d 918, 921 (Colo.1986). Statutes susceptible to more than one interpretation, however, are ambiguous and must be construed in light of their legislative intent and purpose. *Engelbrecht v. Hartford Accident & Indem. Co.,* 680 P.2d 231, 233 (Colo.1984); § 2–4–203, 1B C.R.S. (1980).

A plain reading of the phrase "except to the extent that inheritance rights have been divested by ... a final decree of adoption ... under the laws of this state or of any other jurisdiction" in section 15–11–109(1)(a) does not reveal what sources a probate court may consider in determining whether the right to inherit from natural parents has been lost. This language could be construed to prohibit the probate court from considering any source other than the language of the adoption decree, as the

sons suggest. This language could also be construed to require the probate court to consider adoption laws in effect at the time of adoption as well as the language of the adoption decree but not the inheritance laws in effect at the time of adoption. Finally, this language could be construed to require the probate court to consider not only the adoption laws in effect at the time of adoption and the language of the adoption decree but also the inheritance laws in effect at the time of adoption. Because we conclude section 15–11–109(1)(a) is susceptible to more than one interpretation, it is ambiguous.

### 1.

The legislative history of section 15–11–109(1) is silent as to the sources a probate court may consider in determining whether inheritance rights of adopted children were divested. In construing the phrase "except to the extent that inheritance rights have been divested by a final order of relinquishment, a final decree of adoption, or an order terminating the parent-child relationship under the laws of this state or of any other jurisdiction," however, we are guided by a number of rules of statutory construction.

The first applicable rule of construction is the "last antecedent rule." This rule concerns whether the phrase "under the laws of this state or of any other jurisdiction" in section 15–11–109(1)(a) can be construed to modify "a final decree of adoption" even though it immediately follows "an order terminating the parent-child relationship." The last antecedent rule provides that in the absence of a contrary intention, referential and qualifying words and phrases refer solely to the clause immediately preceding it. *People v. McPherson,* 200 Colo. 429, 432, 619 P.2d 38, 40 (1980); 2A N. Singer, *Statutes and Statutory Construction* § 47.33, at 245 (4th ed. 1984). Under this rule of statutory con-

---

This language remains substantially intact in section 19–4–113(2), 8B C.R.S. (1986), *renumbered as* § 19–5–211(2), 8B C.R.S. (1988 Supp.), which states that the natural parents "shall be divested of all legal rights and obligations with respect to the child, and the adopted child shall be free from all legal obligations of obedience and maintenance with respect to the natural parents."

struction, the phrase "under the laws of this state or of any other jurisdiction" would modify "an order terminating the parent-child relationship" but not "a final order of relinquishment" or "a final decree of adoption." The General Assembly, however, expressly repudiated the last antecedent rule in 1981 by its adoption of section 2–4–214, 1B C.R.S. (1988 Supp.) which holds that relative and qualifying words and phrases are not presumed to modify solely the clause they follow. *See People v. Myers*, 714 P.2d 513, 515 (Colo.App. 1985).

■ When a referential or qualifying clause follows several words or phrases and is applicable as much to the first word or phrase as to the others in the list, however, the clause should be applied to all of the words or phrases that preceded it. 2A N. Singer, *Statutes and Statutory Construction* § 47.33, at 245 (4th ed. 1984); *Board of Trustees of Santa Maria Joint Union High School Dist. v. Judge*, 50 Cal. App.3d 920, 926, 123 Cal.Rptr. 830, 834 (1975) (qualifying phrase "involving moral turpitude" in statute requiring dismissal of teacher convicted of "a felony or of any crime involving moral turpitude" modifies not only "any crime" but also "a felony"); *see also Braaten v. State*, 705 P.2d 1311, 1321–22 (Alaska App.1985) (qualifying phrase "due to advanced age, disability, ill health, or extreme youth" in sentencing statute finding aggravation when defendant knew or reasonably should have known victim was "particularly vulnerable or incapable of resistance due to advanced age, disability, ill health, or extreme youth" modifies not only "incapable of resistance" but also "particularly vulnerable"); § 2–4–214, 1B C.R.S. (1988 Supp.). In this case, the phrase "under the laws of this state or of any other jurisdiction" is as applicable to the first phrases as to the others in the list. We therefore construe the phrase "under the laws of this state or of any other jurisdiction" to modify not only "an order terminating the parent-child relationship" but also "a final order of relinquishment" and "a final decree of adoption."

2.

■ Once we conclude that the phrase "under the laws of this state or of any other jurisdiction" in section 15–11–109(1)(a) modifies "a final decree of adoption," two more rules of statutory construction come into play. First, a statute must be construed whenever possible to give effect to all of its parts. 2A N. Singer, *Statutes and Statutory Construction* § 46.06, at 104 (4th ed. 1984); *Colorado Gen. Assembly v. Lamm*, 700 P.2d 508, 517 (Colo.1985); § 2–4–201(1)(b), 1B C.R.S. (1980) (in enacting a statute it is presumed that the entire statute is intended to be effective). Second, adoption statutes must be interpreted *in pari materia* with traditional parental rights under the common law and pertinent inheritance laws. 3A N. Singer, *Statutes and Statutory Construction* § 68.04, at 392 (4th ed. 1984); *see Quintrall v. Goldsmith*, 134 Colo. 410, 416, 306 P.2d 246, 249 (1957) (construing adoption law concerning inheritance and parental duties in effect at the time of adoption *in pari materia* with laws concerning inheritance and parental duties of natural children); *see also In re Hewett's Estate*, 153 Fla. 137, ——, 13 So.2d 904, 906 (1943) (Florida intestate succession laws should be construed *in pari materia* with Florida adoption laws); *Thornton v. Anderson*, 207 Ga. 714, 717, 64 S.E.2d 186, 188 (1951) ("The statute fixing [Georgia's] rules of inheritance must be construed *in pari materia* with [Georgia's] adoption statute"); *In re Estate of Shehady*, 83 N.M. 311, ——, 491 P.2d 528, 529 (1971) (construing adoption laws *in pari materia* with inheritance laws in effect at the time of adoption).

With these rules in mind, we turn to the interpretations suggested by the parties.

3.

Construing section 15–11–109(1)(a) to require a probate court to examine only the language of the adoption decree, as the sons suggest, gives no effect to the phrase "under the law of this state or of any other jurisdiction." In addition, as the court of

appeals properly recognized, construing section 15–11–109 as the sons suggest would require us to rewrite the phrase "except to the extent that inheritance rights have been divested *by* . . . a final decree of adoption" as "except to the extent that inheritance rights have been divested *in* . . . a final decree of adoption." This much of the statute is clear.

Construing section 15–11–109(1)(a) as divesting all adopted children of the right to inherit from natural parents who died intestate after July 1977 without regard to the law in effect at the time of adoption, as Snelson suggests, not only fails to give effect to the phrase "under the law of this state or of any other jurisdiction" but also fails to give effect to the phrase "except to the extent that." To adopt the blanket rule Snelson suggests, we would have to re-write the phrase *"except to the extent* that inheritance rights have been divested" in section 15–11–109(1)(a) as *"unless* inheritance rights have been divested."

■ Construing section 15–11–109(1)(a) to require an examination of the laws in effect at the time of adoption, however, is a sensible reading of the statute because it gives effect to the phrase "under the laws of this state or of any other jurisdiction." In addition, construing section 15–11–109(1)(a) to require an examination of the laws in effect at the time of adoption also gives meaning to the phrase "except to the extent" because laws in effect at different times may produce different results for adopted children depending on when the children were adopted and when the natural parent died. Children adopted between May 1961 and July 1977, for example, may not inherit by intestate succession from their natural parents who died before July 1977 because the inheritance law in effect at the time of the intestate's death prohibited such a result. 1963 C.R.S. § 153–2–4; *People v. Estate of Murphy*, 29 Colo.App. 195, 197–98, 481 P.2d 420, 421 (1971); *see*

*Estate of Warr*, 111 Colo. 85, 89, 137 P.2d 408, 410 (1943).[4]

Children adopted after July 1977 also may not inherit by intestate succession from their natural parents who died thereafter. This result follows from a reading of section 15–11–109(1)(a) together with section 19–11–108(1), 8 C.R.S. (1977), *renumbered as* § 19–3–608(1), 8B C.R.S. (1988 Supp.), a provision of the children's code enacted at the same time as section 15–11–109(1)(a). *See* ch. 248, sec. 1, § 19–11–108, 1977 Colo.Sess.Laws 1026, 1028. The 1977 version of section 19–3–608(1), which described the legal effect of an order terminating the parent-child relationship, stated:

> An order for the termination of the parent-child legal relationship divests the child and the parent of all legal rights, powers, privileges, immunities, duties, and obligations with respect to each other, except for the right of the child to inherit from the parent. *Such child's right of inheritance shall be terminated only by a final decree of adoption.*

(Emphasis added). That the effect of an adoption decree entered after section 15–11–109(1)(a) became effective is to divest adopted children of the right to inherit from their natural parents finds additional support in section 19–4–103(4), 8 C.R.S. (1981), *renumbered as* § 19–5–104(4), 8B C.R.S. (1988 Supp.), a 1981 addition to the children's code. *See* ch. 237, sec. 2, § 19–4–103(4), 1981 Colo.Sess.Laws 1045, 1046. The 1981 version of section 19–5–104(4), which described the legal effect of a final order of relinquishment, stated:

> A final order of relinquishment shall divest the relinquishing parent or parents of all legal rights and obligations they may have with respect to the child relinquished, but it shall not modify *the child's status as an heir at law* which *shall cease only upon a subsequent final decree of adoption* . . . .

**4.** Section 153–2–4(2), which was in effect when the sons were adopted, states:

> Legally adopted children shall not inherit property from or through their natural parents or the heirs of their natural parents who

die intestate after their adoption; provided, that a legally adopted child who was last adopted by the spouse of a natural parent shall inherit from and through such natural parents and the heirs of such natural parent.

(Emphasis added). The 1977 and 1981 additions to the children's code, when read in conjunction with section 15–11–109(1)(a) of the probate code, show that an adopted child whose natural parents died after the current law went into effect may not inherit from a natural parent by intestate succession. These additions to the children's code, however, have no effect on persons such as the sons who were adopted prior to 1977 because these statutes demonstrate no intent to be applied retroactively. Statutes must be given a prospective application unless a contrary legislative intent is clearly manifested. *Allchurch v. Project Unicorn, Ltd.*, 33 Colo.App. 173, 176, 516 P.2d 441, 442 (1973); § 2–4–202, 1B C.R.S. (1980) (statute presumed to be prospective in operation). That the 1977 and 1981 additions to the children's code have no retroactive effect further undermines Snelson's contention that adopted children whose natural parents die after July 1977 are divested of the right to inherit from their natural parents regardless of the law in effect at the time of adoption.

When read *in pari materia* with what are now sections 19–3–608(1) and 19–5–104(4), section 15–11–109(1)(a) also demonstrates a present legislative intent not to divest adopted children of the right to inherit by intestate succession from their natural parents during the interim period following an order terminating the parent-child relationship or order of relinquishment but preceding adoption. Such an interpretation of section 15–11–109(1)(a) thereby gives further effect to the phrase "except to the extent that" because children would be divested of the right to inherit from their natural parents depending on whether they had been adopted.

### C.

The difference between *Bomareto* and *David* can best be explained by interpreting section 15–11–109(1)(a) to require a probate court to consider adoption and inheritance laws in effect at the time of adoption. The distinction urged by the court of appeals in *Bomareto* is factually inaccurate. Both the adoption decree in *Bomareto* and the adoption decrees in *David* contained identical divesting language which incorporated the language of then-applicable section 4–1–11. The distinction urged by the majority of the court of appeals in *David*, however, properly recognizes that children adopted after May 1961, as the sons in this case were, could not inherit from their natural parents, because the inheritance law in effect at the time of their adoption divested them of this right.

*Bomareto* erroneously concluded that under section 15–11–109(1)(a) a probate court could not consider adoption and inheritance laws in effect at the time of adoption unless they were incorporated by reference into the adoption decree, while *David* correctly concluded that under section 15–11–109(1)(a), a probate court must consider the adoption and inheritance law in effect at the time of adoption. We therefore disapprove of the reasoning in *Bomareto*.

### III.

■ We conclude that the General Assembly in enacting section 15–11–109(1)(a) intended to require a probate court determining the heirs of a natural father who died intestate to consider adoption and inheritance laws in effect at the time of the adoption. Because the inheritance law in effect at the time of the sons' adoption prohibited adopted children from inheriting from or through their natural parents, the court of appeals correctly concluded that

the sons were divested of the right to inherit from David by intestate succession.

The judgment of the court of appeals is affirmed.

ERICKSON, J., does not participate.