**Kathryn CHANDLER–McPHAIL, Plaintiff–Appellant,**

v.

**James DUFFEY, M.D., Defendant–Appellee.**

**No. 07CA1670.**

Colorado Court of Appeals, Div. VI.

Aug. 7, 2008.

Cross & Bennett, LLC, Keith Cross, Joseph Bennett, Colorado Springs, Colorado, for Plaintiff–Appellant.

Pryor Johnson Carney Karr Nixon, P.C., Elizabeth Moran, David Jones, Daniel Hubbard, Greenwood Village, Colorado, for Defendant–Appellee.

Opinion by Judge LOEB.

In this medical malpractice action, plaintiff, Kathryn Chandler–McPhail, appeals from the trial court's judgment awarding defendant, Dr. James Duffey, costs incurred in the defense of this action that resulted in a jury verdict in favor of Dr. Duffey. We reverse.

## I. Background

Chandler–McPhail was insured by Kaiser Foundation Health Plan of Colorado (Kaiser), pursuant to a plan of health insurance purchased from Kaiser by Chandler–McPhail's employer. The health care coverage provided under the agreement between Chandler–McPhail's employer and Kaiser is described in an Evidence of Coverage (EOC). The EOC describes, in part, health care benefits provided under the plan, procedures for obtaining services from primary care physicians and specialists, and dispute filing and resolution procedures.

Under the terms of the EOC, Chandler–McPhail is a "Member" residing in the "Colorado Springs Service Area." As a Member, she was required to choose a "primary care Plan Physician" from Kaiser's panel of affiliated primary care physicians. If she did not choose, one would be selected for her. The EOC advises Members: "[Primary care Plan Physicians have] an established relationship with a specific group of specialty care physicians with whom he or she works. By referring only to a select group of specialists, your primary care Plan Physician is better able to coordinate and oversee your medical care."

"Affiliated Physicians" offer primary medical, pediatric, and OB/GYN care, as well as specialty care in areas such as general surgery, orthopedic surgery, and dermatology. It is undisputed that Dr. Duffey is an Affiliated Physician in Colorado Springs. Members residing in the Colorado Springs Service Area must obtain a referral from their primary care Plan Physician before receiving services from another Affiliated Physician. In the event that a primary care Plan Physician generates a referral to a nonaffiliated physician, and Kaiser does not authorize the services, the services will not be covered by Kaiser.

Chandler–McPhail's primary care physician generated a referral for her to obtain services from Dr. Duffey, an orthopedic specialist. Dr. Duffey performed hip replacement surgery on Chandler–McPhail. Chandler–McPhail filed this action when complications arose from that procedure.

After the jury returned a verdict in favor of Dr. Duffey, he subsequently filed a bill of costs pursuant to C.R.C.P. 54 and section 13–16–105, C.R.S.2007. Chandler–McPhail objected to the bill of costs, arguing that Dr. Duffey had waived his right to recover the expenses of litigation pursuant to a provision in the EOC set forth under a heading entitled "Miscellaneous Provisions" stating as follows:

Attorney Fees and Expenses

In any dispute between a Member and Health Plan or Plan Providers, each party will bear its own attorneys' fees and other expenses.

The parties and the trial court assumed Dr. Duffey, as an Affiliated Physician, is a "Plan Provider" under the EOC. Dr. Duffey argued in support of his bill of costs that he was not a party to the EOC, he was not a third-party beneficiary of the EOC, and litigation costs do not constitute "other expenses" under the EOC.

The trial court found that Dr. Duffey was not bound by the EOC provision requiring Members and Plan Providers to bear their own expenses "in any dispute" because he was neither a party to the agreement, nor an intended direct beneficiary of the agreement. The court reasoned Dr. Duffey "receive[d] no benefit from this contract without first entering into a separate contract with Kaiser." The court also relied on the EOC's arbitration clause, which stated that all medical malpractice claims must be submitted to arbitration, in finding that the language of the provision requiring the parties to bear their own costs "in any dispute" was intended to refer only to arbitration disputes and not to litigation. Accordingly, the trial court entered judgment for Dr. Duffey for his costs in the amount of $46,898.02.

Chandler–McPhail now appeals that judgment. The sole issue on appeal is whether Dr. Duffey is precluded under the EOC from collecting costs from Chandler–McPhail as the prevailing party in the litigation.

## II. Litigation Costs

Chandler–McPhail contends the trial court erred by granting Dr. Duffey's request for litigation costs. She argues that Affiliated Physicians are bound by the attorney fees and other expenses provision in the EOC, that Dr. Duffey is a "Plan Provider" as that term is used in the provision, and that the attorney fees and other expenses provision applies to litigation disputes. We agree.

■ The interpretation of language in a contract is a question of law that an appellate court reviews de novo. *Roberts v. Adams*, 47 P.3d 690, 694 (Colo.App.2001). In reviewing a contract, our primary obligation is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract. *Albright v. McDermond*, 14

P.3d 318, 322 (Colo.2000). To determine the meaning of a contract, courts are guided by the general rules of contract construction and should seek to give effect to all provisions so that none will be rendered meaningless. *Roberts*, 47 P.3d at 694.

■ The intent of the parties to an agreement must be determined primarily from the written terms. We will enforce the contract as written unless there is an ambiguity in the language. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo.2003). "We also evaluate the agreement as a whole and construe the language in harmony with the plain and generally accepted meaning of the words employed, unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended." *Id.*

### A. Enforceability of the EOC Against Affiliated Physicians

Chandler–McPhail and Dr. Duffey are undisputedly nonparties to the EOC, which, as noted above, describes an agreement between Chandler–McPhail's employer and Kaiser. Because the parties agree that the agreement was intended to directly benefit Chandler–McPhail, neither party disputes the trial court's ruling that she was a third-party beneficiary of the EOC. Dr. Duffey contends, however, that the agreement is not enforceable against him because he is neither a signatory to nor a third-party beneficiary of the agreement. Because we conclude Affiliated Physicians directly benefit from the EOC, we disagree.

■ A person not a party to an express contract may bring an action on the contract if the parties to the contract intended to benefit the nonparty, provided that the benefit claimed is a direct and not merely incidental benefit of the contract. *Bloom v. Nat'l Collegiate Athletic Ass'n*, 93 P.3d 621, 623 (Colo.App.2004). Similarly, a contractual obligation may be enforced against a nonparty, such as a third-party beneficiary, if the parties to the contract so intended. *See Allen*, 71 P.3d at 379–80; *Parker v. Ctr. for Creative Leadership*, 15 P.3d 297, 298–99 (Colo. App.2000) (third-party beneficiary must accept contract's burdens along with its benefits).

■ While the intent to benefit the nonparty need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both. *Bloom*, 93 P.3d at 623.

Although the factor is not necessarily dispositive, courts have relied heavily on the existence or nonexistence of express terms in an agreement that refer to certain classes of nonparties when determining whether parties intended their agreement to directly benefit certain classes of nonparties. For example, in *Allen*, the supreme court held that a nonparty would be bound by an arbitration clause in an EOC, which was similar to the EOC here, if the nonparty fell within a category expressly referenced by the arbitration clause. *Allen*, 71 P.3d at 381. In doing so, the court distinguished *City & County of Denver v. District Court*, 939 P.2d 1353, 1370 (Colo.1997), which involved an arbitration clause that did not specifically address nonparties. *Allen*, 71 P.3d at 381 n. 4. In *Allen*, the court made clear that it was "constru[ing] an arbitration provision expressly purporting to bind not only the signatory, but also certain non-parties who are in privity with the signatory, namely 'an heir or personal representative or … a person claiming that a duty to him or her arises from a Member's relationship with [Kaiser].' " *Id.* Notably, the court in *Allen* did not rely on the presumption in favor of arbitration to conclude that an arbitration clause expressly addressing a certain class of nonparties in privity with a signatory binds the members of that class, even though it relied heavily on that presumption to conclude that a spouse fell within the class expressly addressed by the terms of the arbitration clause. *Id.* at 380–81.

In *Parker*, a division of this court held that a party to an arbitration agreement could enforce the agreement against a nonparty. *Parker*, 15 P.3d at 299. Like the supreme court in *Allen*, the division relied, in part, on terms in the agreement expressly addressing members of a certain class to which the nonparty belonged. *Id.* Distinguishing the specific language of the arbitration clause, the division also held that a prevailing party attorney fees clause in the same contract could not be enforced against the nonparty because that clause only referenced a "party," and, unlike the arbitration clause in the contract, did not specifically reference a certain class of nonparties. *Id.*

In contrast to nonparties specifically referred to by terms of an agreement, a nonparty generally cannot enforce contract provisions, or be bound by them, where the provisions do not specifically address the nonparty. *See, e.g., Winter Park Real Estate & Invs., Inc. v. Anderson*, 160 P.3d 399, 406 (Colo.App.2007) (relying in part on omission of nonparty's name in contract in holding contract's arbitration provision unenforceable against nonparty); *Harwig v. Downey*, 56 P.3d 1220, 1222–23 (Colo.App. 2002) (concluding that "prevailing party" in attorney fees provision applied only to parties to sales contract and not to nonparty tenants) (citing cases); *Everett v. Dickinson & Co.*, 929 P.2d 10, 14 (Colo.App.1996)(regarding as purposeful the omission of nonparty's name in the contract).

■ Here, the attorney fees and other expenses provision in the EOC, which requires certain persons to bear their own attorney fees and expenses, specifically addresses "Members" and "Plan Providers." With respect to litigation and arbitration expenses, this provision alters the general rule in Colorado allowing prevailing parties to recover costs from their opponents. *See* §§ 13–16–104 to –105, 13–22–225, C.R.S.2007. The terms of the provision thus clearly demonstrate the parties' intent to benefit both "Members" and "Plan Providers" by allowing them to engage in a dispute without the risk of incurring their opponent's expenses in the event they do not prevail, which risk they would otherwise bear under the default rules provided by law. The terms of the provision also demonstrate the parties' intention to impose the concurrent burden on Members and Plan Providers of bearing their own expenses in the event they do prevail. *Cf. Allen*, 71 P.3d at 380; *Parker*, 15 P.3d at 299.

Because the EOC specifically addresses Affiliated Physicians and Plan Providers, *Winter Park* and *Harwig*, which involved contracts that did not specifically address a

nonparty, and upon which Dr. Duffey relies, are distinguishable from this case.

The parties' intent to provide a benefit to Affiliated Physicians such as Dr. Duffey is also apparent from the EOC's definition of an "Affiliated Physician," which provides as follows:

> Affiliated Physician: Any doctor of medicine listed in the Colorado Springs Affiliated Practitioner Directory contracting with Medical Group to provide covered Services to Members *under this Evidence of Coverage.*

(Emphasis added.)

By defining an Affiliated Physician as a doctor who provides health care services to Members under the EOC, the parties indicated their intention to create through the terms of the EOC a defined set of "Services" and "Members" that would provide value and meaning to the contract between an Affiliated Physician and Kaiser. The definition also demonstrates the parties' intention to have the terms of the EOC facilitate, where applicable, the relationship between Affiliated Physicians and Members. To that end, for example, the terms of the EOC protect an Affiliated Physician's ability to effectively provide services to Members, and thus directly benefit Affiliated Physicians, by giving Kaiser the power to terminate the membership of an entire family unit where an individual is "disruptive, unruly, or abusive to the extent that the ability of ... a Plan Provider to provide Services to [the Member], or other Members, is seriously impaired [or] fail[s] to establish and maintain a satisfactory provider-patient relationship, after the Plan or Affiliated Physician has made reasonable efforts to promote such a relationship."

The circumstances surrounding the agreement evidenced by the EOC also demonstrate the parties' intention to benefit Affiliated Physicians. First, the parties' intent to benefit Affiliated Physicians under the EOC is demonstrated by inclusion of the arbitration clause requiring that claims against them be submitted to binding arbitration. Although the parties agree the arbitration clause is unenforceable because it does not meet the requirements of the Health Care

Availability Act, *see Allen,* 71 P.3d at 384 (holding a similar clause unenforceable), the clause nevertheless indicates the parties' general concern over the costs of litigation borne by Affiliated Physicians, and, specifically, their intention to benefit Affiliated Physicians by requiring Members to submit claims against them to arbitration.

We are also persuaded by Chandler–McPhail's argument that the structure of an HMO such as Kaiser directly benefits the physicians and specialists who contract with the HMO to deliver health care services. From the perspective of an Affiliated Physician, an HMO operates as a comprehensive referral service that generates business for the Affiliated Physician and guarantees payment for the services provided. *See generally Chase v. Indep. Practice Ass'n,* 31 Mass. App.Ct. 661, 583 N.E.2d 251, 252 n. 3 (1991) (explaining nature of an HMO). Indeed, a "referral" to an Affiliated Physician specialist under the EOC is much more than a recommendation. A Member has little choice, if any, about to whom he or she is referred, and, to remain covered by the EOC, a Member must obtain services from the specialist to whom he or she is referred. Thus, for all practical purposes, a referral to an Affiliated Physician specialist under the EOC forces a Member to obtain services from that particular specialist, who thereby benefits by competing for business among a large pool of Members created by the EOC who have strict limitations placed on their option to select a specialist by the EOC.

Contrary to Dr. Duffey's contention, an Affiliated Physician benefits from the agreement under the EOC even though the physician also receives the benefits of the HMO structure from his or her contract with Kaiser. But for an agreement between an employer and Kaiser such as the EOC here, an Affiliated Physician would not be part of the limited market of specialists available to Members. Thus, while we agree with the trial court that Dr. Duffey "receives no benefit from [the EOC] without first entering into a separate contract with Kaiser," the reciprocal proposition is also true: Dr. Duffey receives no benefit from his separate contract

with Kaiser without an employer first entering into an EOC with Kaiser.

In summary, we conclude the benefit to an Affiliated Physician offered by the HMO here derives from both a contract between Kaiser and the Affiliated Physician, which gives the physician access to Members, and an EOC, which generates Members and limits the Members' options in seeking health services.

Based on the terms of the attorney fees and other expenses provision in the EOC, as well as the surrounding circumstances demonstrating the parties' intent to directly benefit Affiliated Physicians under the EOC, we further conclude Affiliated Physicians are third-party beneficiaries under the EOC. Hence, the attorney fees and other expenses provision in the EOC may be enforced against Affiliated Physicians who are Plan Providers. *See Allen*, 71 P.3d at 381; *Jefferson County Sch. Dist. No. R–1 v. Shorey*, 826 P.2d 830, 843 (Colo.1992); *Parker*, 15 P.3d at 299.

### B. Plan Providers

Although not raised in the trial court, Dr. Duffey also contends, as an alternative ground for upholding the trial court's judgment, that he is not a "Plan Provider" as defined by the EOC. We disagree.

The EOC defines "Plan Provider" as follows:

> Plan Provider: A Plan Hospital, Plan or Affiliated Physician, or other health care provider that contracts to provide Services to Members (but not including providers who contract only to provide referral Services).

■ Dr. Duffey contends he is not included in the EOC's definition of "Plan Provider" because he contracted only to provide referral services, and, pursuant to the parenthetical qualifying clause, he is not a Plan Provider. This contention rests on a rule, which is sometimes referred to as an exception to the last antecedent rule, stating that "[w]hen a referential or qualifying clause follows several words or phrases and is applicable as much to the first word or phrase as to the others in the list ... the clause should be

applied to all of the words or phrases that preceded it." *Estate of David v. Snelson*, 776 P.2d 813, 818 (Colo.1989); *see White v. County of Sacramento*, 31 Cal.3d 676, 183 Cal.Rptr. 520, 646 P.2d 191, 193 (1982)(providing two exceptions to the last antecedent rule). Under this rule, Dr. Duffey would apply the relative clause "but not including providers who contract only ..." to the complete list of phrases set forth in the EOC's Plan Provider definition, including the phrase "Affiliated Physician."

Chandler–McPhail contends, on the other hand, that the relative clause "but not including providers who contract only ..." modifies only the final phrase in the definition, "other health care provider that contracts to provide Services to Members," and not the phrase "Affiliated Physician." Thus, she contends that the rule relied upon by Dr. Duffey is not triggered here because the relative clause at issue is not as applicable to the first phrase as to the other phrases in the list.

■ We initially address the parties' contentions about the use and applicability of the last antecedent rule. "The last antecedent rule provides that in the absence of a contrary intention, referential and qualifying words and phrases refer solely to the clause immediately preceding [them]." *Estate of David*, 776 P.2d at 817 (citing *People v. McPherson*, 200 Colo. 429, 432, 619 P.2d 38, 40 (1980)). The rule has generally been applied as a canon of statutory construction. *See, e.g., id.* at 818; *McPherson*, 200 Colo. at 432, 619 P.2d at 40; *see also ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*, 147 Cal.App.4th 137, 53 Cal.Rptr.3d 786, 796 (2007) ("Ordinarily the last antecedent rule applies to statutory construction, but it has also been stated to apply to contracts and has been used specifically to interpret insurance policy language." (citation omitted)); 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 47.33, at 487 (7th ed.2007). With respect to statutory interpretation, the General Assembly has repudiated the last antecedent rule as set forth in *McPherson*, stating explicitly that the rule "does not create any presumption of statutory intent." § 2–4–214,

C.R.S.2007; *see Estate of David*, 776 P.2d at 818.

With respect to contract interpretation, however, we discern no reason why the last antecedent rule should not be applied as a grammatical presumption in determining the intent of the contracting parties. *See, e.g., ACS Systems*, 53 Cal.Rptr.3d at 796; *Gullett v. Van Dyke Constr. Co.*, 327 Mont. 30, 111 P.3d 220, 224 (2005); *Wohl v. Swinney*, 118 Ohio St.3d 277, 888 N.E.2d 1062, 1065 (2008); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 134 n. 2 (Tex.App.2006). As a presumption, the rule is not inflexible and yields to any apparent "contrary intention" of the drafting parties. *See Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 812 (Tex.App.2006); Singer, *Statutes and Statutory Construction* § 47.33, at 487.

The rule of interpretation proposed by Dr. Duffey, that referential and qualifying clauses are to be applied to all preceding words or phrases where the clause is applicable "as much to the first word or phrase as to the others," also focuses on the intent of the parties as a way of determining whether there is evidence to rebut the presumption of the last antecedent rule. *See Estate of David*, 776 P.2d at 818. Thus, the rule relied upon by Dr. Duffey, like the last antecedent rule, is subordinate to the intent of the parties, and, taken together with the last antecedent rule, simply directs a reviewing court to effectuate the intent of the contracting parties. *See Albright*, 14 P.3d at 322; *cf. White*, 183 Cal.Rptr. 520, 646 P.2d at 194 (last antecedent rule is "another way of stating the fundamental rule that a court is to construe a statute 'so as to effectuate the purpose of the law.'" (quoting *Tripp v. Swoap*, 17 Cal.3d 671, 131 Cal.Rptr. 789, 552 P.2d 749, 755 (1976)) ).

Here, the issue is whether the parties intended the qualifying clause "but not including providers who contract only to provide referral Services" to modify the phrase "Affiliated Physician." Looking to the language of the definition of Plan Provider, and evaluating the agreement as a whole, we conclude the qualifying clause was intended to modify only the phrase "other health care provider," and, thus, not the phrase "Affiliated Physician."

First, of the four phrases in the definition's list, (1) "Plan Hospital"; (2) "Plan . . . Physician"; (3) "Affiliated Physician"; and (4) "other health care provider," the language of the qualifying clause "providers *who contract only to provide* . . ." (emphasis added) parallels only the language of the phrase that it directly follows, *"provider that contracts to provide* . . ." (emphasis added). The parties achieved this parallel through precision; they specifically repeated in the qualifying clause the term "provider," which is the subject of the fourth and final phrase. Thus, read naturally, the qualifying clause at issue appears to directly limit the qualifying phrase that it follows, "that contracts to provide Services to Members," which clearly modifies only the term "provider."

By contrast, the language of the qualifying clause at issue is less consistent with, and does not directly refer to, the language used to describe the subjects in the other phrases in the list. Had the parties intended the qualifying clause to modify all of the phrases in the list, they could have easily been more precise by repeating all the terms used as the subject in all the phrases. Alternatively, the parties could have been less precise by not repeating any of the terms used as any of the phrases' subjects. Because the parties repeated the subject of one phrase and not the others, and the phrase repeated was the last antecedent to the qualifying clause, the plain and natural reading of the Plan Provider definition suggests the parties intended the final qualifying clause to refer specifically to, and restrict the meaning of, the phrase "other health care provider that contracts to provide . . ." and not the meaning of the phrases "A Plan Hospital," "Plan Physician," or "Affiliated Physician."

Dr. Duffey's contention is also contrary to the parties' intention as demonstrated by other provisions in the EOC. For example, under Dr. Duffey's interpretation, a "Plan Hospital" that contracts only to provide referral services would not be a Plan Provider. As defined by the EOC, however, a "Plan Hospital" is "[a]ny hospital . . . where [Members] receive hospital care pursuant to ar-

rangements made by a Plan or Affiliated Physician." Because a "Plan Hospital" is defined as an entity that provides health care to Members pursuant to arrangements, which do not appear from the EOC to be different from referrals, it would make little sense to apply the qualifying clause "but not including providers who contract only to provide referral Services" to a phrase that by definition is limited to entities that contract only to provide referral services. The qualifying clause at issue is, therefore, not as applicable to the phrase "Plan Hospitals" as it is to the phrase "other health care provider . . . ," which is not defined by the EOC as an entity that contracts only to provide services pursuant to "arrangements" made by Plan or Affiliated Physicians. The fact that the qualifying clause is more applicable to its immediate antecedent than other phrases in the list suggests the parties intended the qualifying clause to modify the last antecedent, rather than all the phrases in the list. *See Estate of David,* 776 P.2d at 818.

Similarly, the qualifying clause at issue is also less applicable to the phrases "Plan Physician" and "Affiliated Physician" than it is to the phrase "other health care provider." According to the EOC, "Plan or Affiliated Physicians offer primary medical, pediatric, and OB/GYN care as well as special care in areas such as general surgery, orthopedic surgery, and dermatology." In some instances, however, a Plan or Affiliated Physician may decide that Members "require Services not available from [Kaiser, and will refer Members] to a non-Plan Provider inside or outside [the] Service Area." In such instances, a Member must obtain a written referral to the "non-Plan Provider" for Kaiser to cover the services. Also, in the Colorado Springs Service Area, Members must obtain referrals to obtain covered services from Affiliated Physicians other than their primary care Plan Physician.

Thus, under the EOC provisions concerning referrals, Plan Physicians and Affiliated Physicians are different from "non-Plan Providers." Members are referred to non-Plan Providers where Plan Physicians and Affiliated Physicians cannot provide certain services required for Members. While Members must obtain referrals for services provided by Affiliated Physicians in the Colorado Springs Service Area who are specialists, such as surgeons, they may not obtain referrals to non-Plan Providers unless the Affiliated Physician specialists cannot provide the required service. This tiered structure of referrals, combined with the EOC provision concerning referrals that distinguishes "Plan or Affiliated Physicians" from a "non-Plan Provider," demonstrates that the parties intended a referral to an Affiliated Physician specialist or "sub-specialist" to be preferred over, and different from, a referral to a non-Plan Provider. In view of the EOC's disparate treatment of specialists that are Plan and Affiliated Physicians, on the one hand, and non-Plan Provider specialists, on the other, it is unlikely the parties intended to exclude Plan and Affiliated specialists from the definition of "Plan Provider" by placing a qualifying clause directly after the phrase that includes non-Plan Provider specialists and contains language parallel to the qualifying clause. Accordingly, in our view, the qualifying clause "but not including providers who contract only to provide referral Services" is more applicable to the phrase "other health care provider" than the phrase "Plan or Affiliated Physician."

In sum, we conclude the qualifying clause is more applicable to its immediate antecedent than the other phrases listed in the Plan Provider definition. We further conclude the parties did not intend the clause to modify the phrase "Affiliated Physician," *see Estate of David,* 776 P.2d at 818, but, instead, intended to include Affiliated Physicians that provide specialty services such as orthopedic surgery in the definition of "Plan Provider." We therefore reject Dr. Duffey's contention that he is not a Plan Provider under the EOC.

### C. "Any Disputes"

Chandler–McPhail also contends the trial court erred in ruling that the phrase "any dispute," as used in the attorney fees and other expenses provision, is limited to arbitration and does not include claims resolved by litigation. Dr. Duffey, on the other hand, contends the attorney fees and other

expenses provision in the EOC is limited to disputes submitted to arbitration. He argues that, because the parties intended that all claims against Affiliated Physicians be submitted to binding arbitration, the parties intended the words "any dispute" in the separate attorney fees and other expenses provision to mean "any arbitration dispute." We agree with Chandler–McPhail.

To begin with, the plain meaning of the phrase "any dispute" unambiguously includes disputes resolved by litigation. If the parties intended Members, Kaiser, or Plan Providers to recover their attorney fees and costs as prevailing parties in all disputes other than those submitted to arbitration, the parties could have easily limited the language of the subject provision to do so. They could have also placed the provision within the Binding Arbitration section of the EOC, rather than the section entitled "Miscellaneous Provisions."

Moreover, the language of the arbitration clause also demonstrates that the parties intended that the terms "claim" and "dispute" have their ordinary meanings such that a "claim" is a type of "dispute." Specifically, the arbitration clause provides the following:

> [C]laims against [Kaiser], ... or Affiliated Physicians, which arise from any alleged failure or violation of any duty under this EOC, including claims for medical or hospital malpractice[,] ... must be submitted to binding arbitration. By enrolling with Health Plan, you have agreed to the use of binding arbitration in lieu of having *any such dispute* decided in a court of law before a jury.

(Emphasis added.)

Thus, while the arbitration provision applies to a narrower set of "claims," the attorney fees and other expenses provision applies to a broader set of "any dispute." Indeed, the EOC itself explicitly contemplates a type of "dispute" that is not a "claim" and need not be submitted to arbitration, because the EOC provides a dispute resolution mechanism for the appeal of denied medical coverage. This mechanism contains multiple levels of review and appeals, in addition to an "Expedited Appeal" and "External Review." It is apparent from the details of this mecha-

nism that both Members and Kaiser could incur substantial attorney fees and other expenses when a Member appeals Kaiser's denial of medical coverage to the fullest extent allowed under the EOC.

By using the broad and unambiguous language "any dispute" in the attorney fees and other expenses provision, and by also acknowledging a type of dispute not covered by the arbitration clause, we conclude the parties have demonstrated their intent to protect Members and Plan Providers from liability for their opponents' fees and expenses incurred as a result of all disputes, including those not submitted to arbitration.

Looking to the plain language of the contract, and evaluating the contract as a whole, we conclude the attorney fees and other expenses provision was intended to apply to litigation disputes. *See Albright,* 14 P.3d at 322; *Roberts,* 47 P.3d at 694. Accordingly, we conclude the trial court erred by ruling that the EOC's attorney fees and other expenses provision was not applicable to disputes resolved by litigation.

The judgment for costs is reversed.

Judge WEBB and Judge GABRIEL concur.