## No. 79SC275

### The People of the State of Colorado v. Martin J. McPherson

(619 P.2d 38)

Decided August 25, 1980. Opinion modified and as modified rehearing denied September 22, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, William Morris, Assistant Attorney General, for petitioner.

J. Gregory Walta, State Public Defender, Richard D. Irvin, Deputy, for respondent.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

We granted certiorari in *People v. McPherson,* 43 Colo. App. 96, 601 P.2d 355 (1979), to consider the Court of Appeals' decision that the defendant, Martin J. McPherson, could not be convicted of felony menacing because he used an unloaded firearm. We reverse.

About 12:30 a.m. on April 19, 1977, the defendant entered the lobby of the University of Colorado dormitory, Stearns West, in the Williams Village Complex, and confronted the night clerk, an 18-year-old woman student, with a rifle. He first asked her how to get to the roof, and when she did not respond, he ordered her at gunpoint to the elevator. Just then the elevator door opened, and the defendant ordered the two people in the elevator, along with the night clerk, to go outside with him. One of the people in the elevator started to run, and the defendant raised his rifle and yelled "Stop."

The night clerk testified that she was afraid the defendant would shoot her. The defendant, apparently realizing how frightened the people he was holding were, backed away from them, apologizing, "I'm sorry I scared you. I was looking for someone else." As he left he warned, "I have a high-powered rifle here, and if anyone touches that phone, I'll blow a hole right through you."

Another student arrived at the dormitory in time to identify the defendant's car. Within a short time, the police found the defendant as he

left his car in a nearby apartment complex parking lot. He was carrying a rifle in a case and a full box of shells.

At trial, the defendant testified that he spent most of the evening drinking at a bar in a shopping center across the street from the dormitory. Near midnight, he bumped into a man on a narrow stairway, and they exchanged hostile words. The defendant claimed the man threatened to kill him. As the defendant left the bar, he saw his antagonist walk toward Stearns West. The defendant went home and took the rifle and a box of shells from his parents' bedroom. He returned to the dormitory area, intending to confront the man and tell him that he should not threaten people.

The defendant testified that the rifle was unloaded, but he did not tell the people he encountered in the lobby that it was unloaded. He denied verbally threatening anyone and left when he realized he had scared the people he was menacing. There was no evidence that the defendant attempted to use the rifle as a bludgeon or that anyone feared he would do so.

The trial court denied the defendant's motion for judgment of acquittal. The motion was based on the premise that an unloaded firearm cannot be a deadly weapon sufficient to sustain a conviction for felony menacing. In the alternative, the defendant requested the court to instruct the jury on misdemeanor menacing, a lesser included offense of felony menacing, or reckless endangerment. The court denied the requested instructions. During deliberations, the jury asked whether an unloaded weapon constitutes a "deadly weapon." The judge replied that the jury had already been instructed on the law. The jury convicted the defendant of felony menacing, and the court sentenced him to two years' probation.

The Court of Appeals reversed the defendant's conviction, holding that an unloaded rifle is not a deadly weapon.[1] and remanded the case for the jury to determine if the rifle was loaded. If the evidence conflicted on whether the rifle was loaded, the trial court was directed to instruct the jury on the lesser included offense of misdemeanor menacing.

■ The question before us is whether the Court of Appeals erred in holding as a matter of law that an unloaded firearm is not a deadly weapon. We conclude as a matter of law that under the felony menacing statute an unloaded firearm is a deadly weapon. Therefore, we reverse the Court of Appeals' decision and uphold the defendant's conviction.

We base our decision on the statutory definition of a deadly weapon and the purpose of the felony menacing statute. The felony menacing statute provides:

---

[1] The dissenting opinion set forth the argument that it is immaterial whether the rifle was loaded or not; the essential element of the offense is the specific intent to cause fear, and the defendant intended that his victims think the rifle loaded.

"A person commits the crime of menacing if, by any threat or physical action, he knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, if committed by the use of a deadly weapon, it is a class 5 felony." Section 18-3-206, C.R.S. 1973 (now in 1978 Repl. Vol. 8).

A "deadly weapon" is defined in section 18-1-901(3)(e), C.R.S. 1973 (1978 Repl. Vol. 8) as:

". . . any firearm,[2] knife, bludgeon, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or intended to be used is capable of producing death or serious bodily injury."[3]

■ The Court of Appeals assumed that the clause "which in the manner it is used or intended to be used is capable of producing death or serious bodily injury" in the definition of deadly weapon applies to each type of weapon listed. To the contrary, the phrase "which in the manner it is used . . ." modifies only the last antecedent, "other weapon, device, instrument, material, or substance, whether animate or inanimate." "Other weapon" is preceded by an "or", and the general rule of statutory construction is that relative and qualifying words and phrases, where no contrary intention appears, are construed to refer solely to the last antecedent with which they are closely connected. *Moschetti v. Liquor Licensing Authority of the City of Boulder,* 176 Colo. 281, 490 P.2d 299 (1971); *Wheeler v. Rudolph,* 162 Colo. 410, 426 P.2d 762 (1967).

■ Our reading of the statute is consistent with its purpose. The specific intent of the defendant to cause fear is the gravamen of the offense of felony menacing. *People v. Stout,* 193 Colo. 466, 568 P.2d 52 (1977). The felony menacing statute enhances the punishment if the defendant uses a deadly weapon because a deadly weapon will cause a greater degree of fear in the person menaced. The victim does not know whether the firearm is unloaded, and the victim's apprehension and consequent reactions will be the same as if the firearm were loaded. The victim may attempt to escape, as did one of the persons menaced in the case before us, or to defend himself by the use of violence.

The Court of Appeals thought menacing a more serious crime when a deadly weapon is used because of the increased risk of death or serious bodily injury. The Court of Appeals concluded that the increased risk is not present when the firearm is unloaded, and therefore, the more severe

---

[2] "Firearm" is defined as "any handgun, automatic, revolver, pistol, rifle, shotgun, or other instrument or device capable or intended to be capable of discharging bullets, cartridges, or other explosive charges." Section 18-1-901(3)(h), C.R.S. 1973 (1978 Repl. Vol. 8). There is no question here that the rifle was a "firearm."

[3] In 1979 the General Assembly amended the definition of "deadly weapon" as follows: *"any firearm, whether loaded or unloaded . . . ."* section 18-1-901(3)(e) (1979 Supp. to 1978 Repl. Vol. 8).

penalty should not apply. The Court of Appeals relied on cases finding that except where used as a bludgeon an unloaded firearm is not a deadly weapon for felony menacing where present ability to commit violent injury is required before a weapon can be considered deadly. *Hobbs v. State,* 363 P.2d 357 (Alaska, 1961); *People v. Wood,* 10 App.Div.2d 231, 199 N.Y.S.2d 342 (1960). *See also United States v. Garcia,* 555 F.2d 708 (9th Cir. 1977); *People v. Orr,* 43 Cal.App.3d 666, 117 Cal.Rptr. 738 (1974); *Else v. State,* 555 P.2d 1210 (Alaska, 1976); *Loretta v. Sheriff,* 93 Nev. 344, 565 P.2d 1008 (1977).

The Colorado General Assembly changed the statutory definition of assault from present ability to inflict injury to apparent ability to inflict injury when assault and battery were merged into the present assault statutes.[4]   Jurisdictions with statutes which require only apparent ability to cause serious bodily injury have held that an unloaded firearm is a deadly weapon *per se. Sousa v. United States,* 400 A.2d 1036 (D.C.App.), *cert. denied* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979); *State v. Deutscher,* 225 Kan. 265, 589 P.2d 620 (1979); *State v. Maxwell,* 328 A.2d 801 (Me. 1974); *Commonwealth v. Henson,* 357 Mass. 686, 259 N.E.2d 769 (1970).

■   The apparent ability cases might help us resolve concerns about whether a weapon is "capable of producing death or serious bodily injury" if we were considering an assault statute requiring intent to cause bodily injury. In such a case, the fact the weapon is loaded may establish that the defendant had the requisite statutory intent to commit assault. However, the specific intent for felony menacing is the intent to place another in fear of imminent serious bodily injury. Whether the defendant had the intent or ability to inflict injury is not the gist of felony menacing. The use of a firearm to menace places the victim who has no way of knowing whether the firearm is loaded in fear of serious bodily injury. Therefore, we hold, as a matter of law, that an unloaded firearm is a deadly weapon under the felony menacing statute.

■   The trial court refused the defendant's tendered instructions on the lesser included offense, misdemeanor menacing, and reckless endangerment.[5]  Because we have ruled that menacing with an unloaded firearm

---

[4] The earlier statute, C.R.S. 1963, 40-2-33, defined assault as "an unlawful attempt coupled with a present ability to commit a violent injury on the person of another." The present statute, for example, section 18-3-203(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8), provides that
"[a] person commits the crime of assault in the second degree if:
(b) [w]ith intent to cause serious bodily injury to another person, he causes or attempts to cause such injury to any person by means of a deadly weapon."
The assault statute and the felony menacing statute have the same definition for "deadly weapon," section 18-1-901(3)(e), C.R.S. 1973 (1978 Repl. Vol. 8, current version in 1979 Supp.).

[5] Section 18-3-208, C.R.S. 1973 (now in 1978 Repl. Vol. 8), provides: "[a] person who recklessly engages in conduct which creates a substantial risk of serious bodily injury to another person commits reckless endangerment . . . ."

is menacing with a deadly weapon, there is no evidence to support the giving of a misdemeanor menacing instruction. Likewise, since there is no evidence to support a conclusion that the defendant created "a substantial risk of bodily injury," no instruction on reckless endangerment was required. *People v. White,* 191 Colo. 353, 553 P.2d 68 (1976).[6]

We reverse the judgment of the Court of Appeals and return the cause to that court for disposition consistent with the views expressed herein.

---

[6] The defendant contends that the jury also should have been instructed on the lesser non-included offense of prohibited use of a weapon, section 18-12-106(1)(a), C.R.S. 1973 (now in 1978 Repl. Vol. 8). It is not clear from the record whether the defendant tendered an instruction on the offense. It is clear, however, that the defendant did not preserve the issue in his motion for a new trial, and therefore, we do not consider it. *People v. Stephens,* 188 Colo. 8, 532 P.2d 728 (1975).