961 P.2d 1077 (1998)
In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1997-98 # 62:
John S. OUTCELT, Petitioner,
v.
Steve SCHUCK and Sharlot Smith, Respondents, and
Victoria Buckley, Rebecca Lenahan and Richard Westfall, Title Board.
No. 98SA132.
Supreme Court of Colorado, En Banc.
June 8, 1998.
*1078 Colorado Education Association, Martha R. Houser, Gregory J. Lawler, Sharyn E. Dreyer, Cathy L. Cooper, Bradley C. Bartels, Denver, for Petitioner.
Powers Phillips, P.C., Richard W. Daily, Denver, for Respondents.
Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section Denver, for Title Board.
Justice HOBBS delivered the Opinion of the Court.
Petitioner John S. Outcelt (Outcelt) appeals the order of the Title Board (Board) denying his motion for rehearing on the designation of the title, ballot title and submission clause, and summary (titles and summary) for the Proposed Initiative 1997-98 # 62 (Initiative # 62). Outcelt claims that the titles and summary fail to adequately inform the public of the priorities for tax credits created by the proposed initiative, and that they fail to fairly inform the public of the limitations on funding from the Educational Opportunity Fund created by the initiative. The proponents of the initiative and the Board contend that this appeal should be dismissed as untimely filed, and, in the alternative, that the titles and summary are fair, accurate, and succinct. We conclude that Outcelt's appeal was timely filed, and we uphold the Board's action in fixing the titles and summary for this initiative.

I.
On March 6, 1998, Steve Schuck and Sharlot Smith (the proponents) submitted Initiative *1079 # 62[1] to the secretary of state for the fixing of the titles and summary. This initiative proposes to add a new section to Article IX of the Colorado Constitution, requiring that reductions in contributions from the state's general fund to local school districts, as a result of a student transferring from a public school to a non-public school, shall be placed into an "Educational Opportunity Fund." Money in this fund would then be used for a tax credit to parents and legal guardians of public and non-public school students in a specified order of priority.
The Board held its initial hearing on March 18, 1998, and prepared the titles and summary for Initiative # 62 pursuant to section 1-40-106, 1 C.R.S. (1997). On March 25, 1998, Outcelt moved for rehearing pursuant to section 1-40-107(1), 1 C.R.S. (1997). The Board heard Outcelt's motion on Wednesday, April 1, 1998, adopted several of Outcelt's proposed changes, rejected several others, and denied the petition for rehearing. On April 2, 1998, pursuant to section 1-40-107(2), 1 C.R.S. (1997), Outcelt requested a certified copy of the initiative together with the titles and summary, the motion for rehearing, and the Board's ruling on the motion for rehearing. The secretary of state made certified copies of these documents available to Outcelt on Monday, April 6, 1998.
Outcelt filed his appeal with this court on Wednesday, April 8, 1998. On April 9, 1998, the proponents filed a motion to dismiss the appeal, claiming that it was not filed within the five day time limit prescribed by section 1-40-107(2). We requested that the parties brief the issue of timely filing in addition to Outcelt's substantive challenges to the titles and summary.

II.
We hold that an appeal from the Board's title and summary setting action must be filed within five days of the Board's denial of the rehearing motion, pursuant to section 1-40-107(2). However, we conclude that the appeal in this case was timely filed because the intervening weekend is not included under C.A.R. 26(a) when ascertaining compliance with the five day filing requirement. We uphold the Board's action in fixing the titles and summary for Initiative # 62.

A.

The Five Day Filing Requirement
Section 1-40-107(2) describes the procedure for filing an appeal in this court to review the Title Board's action:
If any person who filed a motion for a rehearing pursuant to subsection (1) of this section is overruled by the title board, then the secretary of state shall furnish such person, upon request, a certified copy of the petition with the titles, submission clause, and summary of the proposed law or constitutional amendment, together with a certified copy of the motion for rehearing and of the ruling thereon. If filed with the clerk of the supreme court within five days thereafter, the matter shall be docketed as a cause there pending....
(Emphasis added.) Outcelt contends that the five day filing period runs from the time the secretary of state answers the request for certified documents by furnishing them to the appellant. The Board and the proponents contend that the Board's denial of the rehearing motion triggers the commencement of the filing period. We agree.
We must read and interpret statutory language in its context. See § 2-4-101, 1 C.R.S. (1997). When legislative language is unambiguous, we give effect to the plain and ordinary meaning of the statute without resort to other rules of statutory construction. See Climax Molybdenum Co. v. Walter, 812 P.2d 1168, 1173 (Colo.1991). When the language is ambiguous or capable of more than one meaning, we construe the statute in light of the General Assembly's objective, employing the presumption that the legislature intended a consistent, harmonious, and sensible effect. See Denver Area Labor Federation, AFL-CIO v. Buckley, 924 P.2d 524, 527 (Colo.1996).
*1080 In the context of the initiative process, we construe ambiguous statutory provisions, or conflicting interpretations of legislative language, in a manner which favors the initiative and referendum rights of citizens. See Fabec v. Beck, 922 P.2d 330, 341 (Colo.1996). In construing constitutional and statutory provisions governing the initiative process, we refrain when possible from a technical construction which would hamper the initiative process further than necessary to "fairly guard against fraud and mistake in the exercise by the people of this constitutional right." See id. (quoting Loonan v. Woodley, 882 P.2d 1380, 1384 (Colo.1994)).
The term "thereafter" in section 1-40-107(2) obviously refers to the preceding sentence. But ambiguity arises because the preceding sentence refers to two separate actions: (1) the Board's action in overruling the motion for rehearing, and (2) the secretary of state's action in furnishing certified documents relating to the Board's action. To determine which action triggers the running of the five day filing requirement, we must ascertain the General Assembly's objectives in the enactment of section 1-40-107(2).
We conclude that the five day filing requirement achieves two legislative objectives. The first objective is that of finality of Board action in the event no appeal is timely filed. We have previously noted that finality of agency action is a primary objective of the General Assembly when it fixes statutory deadlines for taking an appeal from an administrative decision. See State Personnel Bd. v. Gigax, 659 P.2d 693, 694 (Colo.1983)(interpreting statute which required filing of appeal to State Personnel Board within ten days, and noting that "[p]romoting the finality of decisions by the Board was clearly one of the General Assembly's primary objectives when it incorporated a ten-day limitation into [the statute]"). The second objective consists of an expedited appeal process from the Board's title and summary setting action. See § 1-40-107(2)(stating that appeals docketed in this court under this section shall have priority).
Outcelt asserts that the words "five days thereafter" must refer to the verb immediately preceding, "shall furnish," which describes the secretary of state's certification function. This approach mirrors the rule of statutory construction adopted by this court in People v. McPherson, 200 Colo. 429, 432, 619 P.2d 38, 40 (1980), which stated that "relative and qualifying words and phrases, where no contrary intention appears, are construed to refer solely to the last antecedent with which they are closely connected." However, in section 2-4-214, 1 C.R.S. (1997), the General Assembly expressly rejected this approach, stating that "the rule of statutory construction expressed in [McPherson] ... has not been adopted by the general assembly and does not create any presumption of statutory intent."[2]
Of greater significance, Outcelt's proposed construction would entirely defeat the legislative objectives of finality of Board action and an expedited procedure in the event of an appeal. Under section 1-40-107(2) the secretary of state has no obligation to certify documents related to the Board's action except "upon request." If the time for filing an appeal does not begin to run until an opponent of the Board's action chooses to request the certification, the appeal process could be continued indefinitely at the instance of a party who has every incentive to favor delay and cause uncertainty. The proponent would be required to wait for an indefinite period for an appeal to be filed, or, with a constitutional deadline looming for gathering the requisite number of valid signatures,[3] begin to circulate a petition which may be superseded *1081 as a result of our review and remand to the Board.
Outcelt contends that requiring an appeal to be filed within five days of the denial of a rehearing motion may require the appellant to proceed without having obtained all of the certified documents. No such delay occurred in this case because the secretary of state certified the relevant documents on the fifth day after rehearing was denied. Thus, we need not address the hypothetical problem posed by Outcelt. We note, however, that remedies are available in an appropriate case. See, e.g., In re Proposed Initiative on Educ. Tax Refund, 823 P.2d 1353, 1356 (Colo.1991)(appeal docketed in this court held in abeyance pending filing of certified copy of the ruling on the motion for rehearing).
Here, we must give effect to the General Assembly's objectives of finality of Board action and an expedited appeal process. We therefore construe section 1-40-107(2) as requiring a person to appeal the Board's action in fixing the titles and summary within five days after the Board overrules that person's rehearing motion.

B.

Colorado Appellate Rule 26(a)
Outcelt next contends that, even if an appeal must be filed within five days of the Board's action in denying a petition for rehearing, his appeal was timely filed under the provisions of C.A.R. 26(a), which states that Saturdays, Sundays, and legal holidays are not to be included when calculating a time period less than seven days. We agree. C.A.R. 26(a) states:
In computing any period of time prescribed by these rules, by an order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period shall be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period extends until the end of the next day which is not a Saturday, Sunday or a legal holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.

(Emphasis added.)
By its express language, C.A.R. 26 applies to "any period of time prescribed ... by any applicable statute." Section 1-40-107(2) contains a time period of less than seven days; Rule 26(a) therefore applies. See Okerberg v. People, 119 Colo. 529, 530, 205 P.2d 224, 224 (1949)(applying identical language of C.R.C.P. 6(a) to five day notice period for mental competency hearings). We have stated that this court may not adopt a rule which alters a jurisdictional limit provided by statute. See Bill Dreiling Motor Co. v. Court of Appeals, 171 Colo. 448, 455-56, 468 P.2d 37, 41 (1970). However, C.A.R. 26(a) guides the computation of time in determining whether a person has complied with the jurisdictional requirement; it does not alter the jurisdictional effect of a statutory deadline for taking an appeal.[4]
Here, the Board denied Outcelt's petition for rehearing on Wednesday, April 1. The five day filing period began to run the next day, Thursday, April 2. See C.A.R. 26(a) ("In computing any period of time prescribed by ... any applicable statute, the day of the act ... from which the designated period of time begins to run shall not be included."). Excluding the intervening Saturday and Sunday in computing the time, the fifth day following the Board's action was Wednesday, April 8, the day on which the appeal was filed. Outcelt timely filed this appeal, and we now proceed to the merits of the controversy.

C.

Fair and Correct Titles and Summary
Under section 1-40-106(3)(b), 1 C.R.S. (1997), the Board must fix a title that "shall *1082 be brief" and that "shall correctly and fairly express the true intent and meaning" of the proposed initiative. Under section 1-40-106(3)(a), 1 C.R.S. (1997), the Board is required to prepare a "clear, concise summary of the proposed law or constitutional amendment," which should be "true and impartial and shall not be an argument, nor likely to create prejudice, either for or against the measure." Outcelt asserts that the titles and submission clause fixed by the Board in this case do not (1) "correctly and fairly inform the public of the `priorities' created by the proposed initiative," and (2) "correctly and fairly inform the public of the limitations on funding from the `Educational Opportunity Fund.'"
When reviewing the Board's action,
[w]e do not consider whether the Board set the best possible title, ballot title and submission clause and summary. Rather, our duty is to ensure that the title, ballot title and submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the board.
In re Proposed Initiated Constitutional Amendment Concerning the Fair Treatment of Injured Workers Amendment, 873 P.2d 718, 719 (Colo.1994). In other words, we will not rewrite the titles or submission clause for the Board, and we will reverse the Board's action in preparing them only if they contain a material and significant omission, misstatement, or misrepresentation.
In making this analysis, we do not construe the legal effect of the proposal as if it had been adopted. See In re Proposed Initiative #26 Concerning Sch. Impact Fees, 954 P.2d 586, 592-93 (Colo.1998). Rather, we characterize the proposal only insofar as necessary to conduct review for compliance with the constitutional and statutory provisions which apply to the initiative process. See In re Ballot Title 1997-98 # 30, 959 P.2d 822, 825 (Colo.1998).
Initiative # 62 sets forth the following priorities for the tax refund:
(4) The tax credit shall be made available to eligible persons in a time and manner determined by law. Eligibility for the tax credit shall be prioritized as follows:
(a) The first priority for distribution shall be parents or legal guardians of any student who hereafter transfers to a non-public school from a public school district that is below the state average in student performance as measured by assessments approved by the state board of education, and parents or legal guardians of any special needs student as defined by law.
(b) The remaining funds in the Educational Opportunity Fund shall then be applied to the next priority, parents or legal guardians of any student who hereafter transfers to a non-public school from any other public school district.
(c) The remaining funds in the Educational Opportunity Fund shall then be applied to the next priority, low income parents or legal guardians of students in non-public schools.
(d) The remaining funds in the Educational Opportunity Fund shall then be applied to the next priority, all other parents or legal guardians of students in non-public schools.
(e) The remaining funds in the Educational Opportunity Fund shall then be applied to the next priority, parents or legal guardians of public school students and parents or legal guardians of any student who is participating in a non-public home-based educational program.
Outcelt contends that the language "establishing priorities for eligibility for such credit" in the titles and submission clause does not accurately summarize this passage. He asserts that the "mere passing reference to `priorities' fails to give notice to the public that parents of non-public school students have a much greater priority, and are much more likely to benefit from the initiative, than parents of public school students." Outcelt would prefer to see the titles and submission clause reworded to reflect that the initiative establishes "five priorities, primarily among parents of non-public school students."
*1083 Outcelt's suggested wording, however, could confuse voters into believing that all non-public school parents would have priority over all public school parents. This is not the case, however, as the list of priorities makes clear that the benefit of the credit primarily but not exclusively would inure to non-public school parents whose children have transferred from a below average public school into a private school and to parents of special needs students.
The Board need not specifically delineate this distinction. It is sufficient that the Board informs voters of the fact that not all parents will necessarily be eligible for the tax credit. This alerts concerned voters that they should read the complete language of the summary or of the initiative in order to determine what these priorities are. "The Board need not and often cannot describe every feature of a proposed initiative in a title or ballot title and submission clause and simultaneously heed the mandate that such documents be concise." In re Proposed Initiative on Sch. Pilot Program, 874 P.2d at 1071. To require such would be to transform what the General Assembly intendeda relatively brief and plain statement by the Board setting forth the central features of the initiative for the votersinto an item-by-item paraphrase of the proposed constitutional amendment or statutory provision.
Outcelt's second contention refers to the Educational Opportunity Fund that the amendment would create to fund the tax credit. Under the initiative, taxpayer money which would ordinarily go back to the state when a public school student transfers to a non-public school is instead placed in the fund. This money is then dispersed in the form of a tax credit according to the priorities listed in the initiative. The amount of the tax credit is to be determined by the General Assembly, pursuant to limitations created by the initiative, and there is no guarantee that all the parents on the priority list will receive a tax credit.
Outcelt asserts that while the proposed initiative makes it clear that the availability of the tax credit will depend upon the amount of money that is in the fund, the title and the submission clause state only that the fund will offset "the entire costs of such credit," without mentioning this limitation. Outcelt would delete the word "entire" and instead say that the fund will be used "to fund, in order of the established priorities, the costs of such credit." This rewording is not essential. The fund would, in fact, offset "the entire costs of such credit" as the titles and submission clause state, because the credit would be applied only insofar as funds are available. In addition, the mere existence of priorities for applying the tax credit makes it apparent that the fund is limited; if everybody that is eligible for the credit would automatically receive it, a list of priorities would be superfluous.
The Board is not required in the titles and summary to restate the obvious or set forth every detail. The aim is to capture, in short form, the proposal in plain, understandable, accurate language enabling informed voter choice in pursuit of the initiative rights of Colorado citizens. The titles and summary which the Board set for Initiative # 62 are not misleading, nor do they contain a material omission or misrepresentation.

III.
Accordingly, we hold that Outcelt filed a timely appeal to this court. Upon review, we affirm the Board's action in fixing the titles and summary for Initiative # 62.
MARTINEZ, J., specially concurs, and KOURLIS, J., joins in the special concurrence.
SCOTT, J., dissents.

Appendix A

Proposed Initiative Number 1997-98 # 62
The title as designated and fixed by the board is as follows:
AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO CONCERNING THE ESTABLISHMENT OF AN INCOME TAX CREDIT FOR PARENTS OR LEGAL GUARDIANS OF CHILDREN ENROLLED IN PUBLIC, *1084 NON-PUBLIC SCHOOLS AND NON-PUBLIC HOME-BASED EDUCATIONAL PROGRAMS, AND, IN CONNECTION THEREWITH, REQUIRING THE GENERAL ASSEMBLY TO ESTABLISH AN INCOME TAX CREDIT FOR INCOME TAX YEARS BEGINNING IN 1999; SPECIFYING THE METHODS FOR DETERMINING THE AMOUNT OF SUCH CREDIT; ESTABLISHING PRIORITIES FOR ELIGIBILITY FOR SUCH CREDIT; ESTABLISHING AN EDUCATIONAL OPPORTUNITY FUND TO BE USED TO OFFSET THE ENTIRE COSTS OF SUCH CREDIT; PROHIBITING REDUCTIONS IN CURRENT PER-STUDENT PUBLIC SCHOOL EXPENDITURES AS A RESULT OF THE MEASURE OR AS A RESULT OF THE TRANSFER OF STUDENTS TO NON-PUBLIC SCHOOLS; PROHIBITING THE STATE OR ANY POLITICAL SUBDIVISION THEREOF FROM USING THIS SECTION TO INCREASE THEIR REGULATORY ROLE OVER THE EDUCATION OF CHILDREN IN NON-PUBLIC SCHOOLS BEYOND THAT EXERCISED AND EXISTENT ON JANUARY 1, 1998; AND ELIMINATING ELIGIBILITY FOR THE INCOME TAX CREDIT OF PARENTS OR LEGAL GUARDIANS WHO SEND CHILDREN TO CERTAIN NON-PUBLIC SCHOOLS, INCLUDING THOSE THAT ILLEGALLY DISCRIMINATE ON THE BASIS OF RACE, ETHNICITY, COLOR OR NATIONAL ORIGIN OR TEACH HATRED.
The ballot title and submission clause as designated and fixed by the Board is as follows:
SHALL THERE BE AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO CONCERNING THE ESTABLISHMENT OF AN INCOME TAX CREDIT FOR PARENTS OR LEGAL GUARDIANS OF CHILDREN ENROLLED IN PUBLIC, NON-PUBLIC SCHOOLS AND NON-PUBLIC HOME-BASED EDUCATIONAL PROGRAMS, AND, IN CONNECTION THEREWITH, REQUIRING THE GENERAL ASSEMBLY TO ESTABLISH AN INCOME TAX CREDIT FOR INCOME TAX YEARS BEGINNING IN 1999; SPECIFYING THE METHODS FOR DETERMINING THE AMOUNT OF SUCH CREDIT; ESTABLISHING PRIORITIES FOR ELIGIBILITY FOR SUCH CREDIT; ESTABLISHING AN EDUCATIONAL OPPORTUNITY FUND TO BE USED TO OFFSET THE ENTIRE COSTS OF SUCH CREDIT; PROHIBITING REDUCTIONS IN CURRENT PER-STUDENT PUBLIC SCHOOL EXPENDITURES AS A RESULT OF THE MEASURE OR AS A RESULT OF THE TRANSFER OF STUDENTS TO NON-PUBLIC SCHOOLS; PROHIBITING THE STATE OR ANY POLITICAL SUBDIVISION THEREOF FROM USING THIS SECTION TO INCREASE THEIR REGULATORY ROLE OVER THE EDUCATION OF CHILDREN IN NON-PUBLIC SCHOOLS BEYOND THAT EXERCISED AND EXISTENT ON JANUARY 1, 1998; AND ELIMINATING ELIGIBILITY FOR THE INCOME TAX CREDIT OF PARENTS OR LEGAL GUARDIANS WHO SEND CHILDREN TO CERTAIN NON-PUBLIC SCHOOLS, INCLUDING THOSE THAT ILLEGALLY DISCRIMINATE ON THE BASIS OF RACE, ETHNICITY, COLOR OR NATIONAL ORIGIN OR TEACH HATRED?
The summary prepared by the Board is as follows:
This measure requires the general assembly to establish an income tax credit for the education expenses incurred by parents or legal guardians of children enrolled in public and non-public schools. The measure also requires the general assembly to create an educational opportunity fund from which the amounts required to offset the entire cost of the tax credit are to be taken, including reimbursement to the state for any resulting decrease in tax revenues and the payment to parents or legal guardians of the amount of their refund that exceeds the amount of their tax liability. The measure requires that all savings created by a reduction in public school enrollments attributable to transfers of students to non-public schools on and after the effective date of the measure be transferred to the fund.
*1085 The measure establishes a variable income tax credit amount. For the tuition costs of each child in non-public schools, the income tax credit will be an amount not less than either 50% of the yearly state average public school expenditure per student for all purposes by the state and by local school boards in the prior complete school year or 80% of the cost of tuition paid in the applicable tax year plus such other education expenses allowed by law, whichever is less. For the tuition costs of each special needs student enrolled in non-public schools, the income tax credit will be an amount determined by the general assembly that recognizes the higher cost of educating such children. For parents and legal guardians of public school students, the income tax credit will be the maximum amount available, as determined by law. Parents or legal guardians of children who participate in a non-public home-based educational program shall be eligible for an income tax credit only for curricular materials and educational supplies as provided by law.
The measure requires that eligibility for the income tax credits be prioritized for purposes of distributing the amount of money available in the educational opportunity fund. The first priority shall be for parents or legal guardians of any student who transfers from a public school district that is below the state average in student performance to a non-public school after the effective date of the measure and for parents or legal guardians of any special needs student. If any moneys remain in the educational opportunity fund, they shall first be applied to an income tax credit for parents or legal guardians of any student who transfers from any other public school district to a non-public school after the effective date of the measure. If any moneys remain in the fund, they shall then be applied to an income tax credit for low income parents or legal guardians of students in non-public schools. If moneys still remain, they shall be applied to all other parents or legal guardians of students in non-public schools. Finally, if moneys remain in the fund, they shall be applied to an income tax credit for parents or legal guardians of public school students and parents or legal guardians of any student participating in a non-public home-based educational program.
The measure makes parents or legal guardians ineligible for the income tax credit if they send their children to a non-public school that discriminates on the basis of race, ethnicity, color or national origin, advocates unlawful behavior or teaches hatred of any person or group on the basis of race, ethnicity, color, national origin, religion, or gender, or knowingly employs a person convicted of a crime involving lewd or lascivious conduct or any offense involving molestation or other abuses of a child.
The measure prohibits a reduction in current per-student public school expenditures and an increase in total state or district expenditures, as adjusted for inflation, as a result of this measure or as a result of the transfer of students to non-public schools in Colorado after the effective date of the measure. The measure also prohibits the state or any subdivision thereof from using the measure to increase its regulatory role over the education of children in non-public schools beyond that exercised and existent on January 1, 1998.
The proposed initiative is estimated to have no fiscal impact on school districts, since the districts will continue to be appropriated funds to cover the costs of students enrolled in public schools. Non-school district local governments are not impacted by the bill.
The measure's fiscal impact on state government in the first year of the implementation is estimated to be $639,653 for costs associated with creating an income tax credit, including costs for programming, printing, mailing new forms and processing rebate checks. The costs of implementing the proposed income tax credit on an annual basis thereafter is estimated to be $464,653. In order to ensure that income tax credits are distributed in priority order, and still comply with current deadlines for refunds, the program would be run as a separate rebate program rather than as part of the income tax system. As such, the program would require a separate form for each person claiming the rebate. There could be additional costs involved in tracking students who leave the public schools. All of the above costs would *1086 be paid from the Education Opportunity Fund.
Hearing adjourned March 18, 1998, at 2:52 p.m.
April 1, 1998 Rehearing
 Mr. John S. Outcelt Motion for Rehearing granted in part, denied in part, to address the title, ballot title and submission clause only.
Rehearing adjourned April 1, 1998, 2:15 p.m.
The proposed initiative is as follows:
Be it enacted by the People of the State of Colorado:
Article IX of the constitution of the state of Colorado is amended BY THE ADDITION OF A NEW SECTION to read:
Section 17. Educational Opportunity Tax Credit.
(1) The people of the State of Colorado, desiring to improve the quality of education available to all children, adopt this section to enable the greatest number of parents and legal guardians to choose among the widest array of quality educational opportunities for their children.
(2) Notwithstanding any provisions of section 7 of this article, section 34 of article V, section 4 of article II, or section 2 of article XI, the General Assembly shall (a) create a refundable state income tax credit for education expenses incurred by parents or legal guardians of children enrolled in public and non-public schools and (b) create an Educational Opportunity Fund from which the amounts required to offset the entire cost of the tax credit shall be drawn, including the reimbursement to the state for the resulting decrease in tax revenues and the payment to parents or legal guardians of the amount of their refund if the amount of their refund exceeds the amount of their tax liability. This refundable tax credit shall be available with respect to education expenses incurred beginning in the 1999 tax year.
(3) The amount of the tax credit will be:
(a) for tuition costs of each child in non-public schools, amounts established by law that are not less than either 50% of the yearly state average public school expenditure per student for all purposes by the state and by local school boards in the prior complete school year or 80% of the cost of the tuition paid in the applicable tax year plus such other education expenses allowed by law, whichever is less.
(b) for tuition costs for each special needs student as defined by law who is enrolled in non-public schools, an amount to be determined by the General Assembly that recognizes the higher cost of education for said children.
(c) for parents and legal guardians of public school students, the maximum amount available as may be determined by law.
(4) The tax credit shall be made available to eligible persons in a time and manner determined by law. Eligibility for the tax credit shall be prioritized as follows:
(a) The first priority for distribution shall be parents or legal guardians of any student who hereafter transfers to a non-public school from a public school district that is below the state average in student performance as measured by assessments approved by the state board of education, and parents or legal guardians of any special needs student as defined by law.
(b) The remaining funds in the Educational Opportunity Fund shall then be applied to the next priority, parents or legal guardians of any student who hereafter transfers to a non-public school from any other public school district.
(c) The remaining funds in the Educational Opportunity Fund shall then be applied to the next priority, low income parents or legal guardians of students in non-public schools.
(d) The remaining funds in the Educational Opportunity Fund shall then be applied to the next priority, all other parents or legal guardians of students in non-public schools.
(e) The remaining funds in the Educational Opportunity Fund shall then be applied to the next priority, parents or legal guardians of public school students and parents or legal guardians of any student who is participating in a non-public home-based educational program.
*1087 (5) All savings created by a reduction in public school enrollments attributable to transfers of students to non-public school on and after the effective date of this section shall be transferred to the Educational Opportunity Fund, which shall be used to offset the entire cost of the tax credit provided for in subsections (3) and (4).
(6) Current per-student public school expenditures shall not be reduced nor shall total state or district expenditures, as adjusted for inflation, be increased as a result of this section or as a result of the transfer of students to non-public schools in the State of Colorado after the effective date of this section.
(7) Parents or legal guardians of children who participate in a non-public home-based educational program shall be eligible for the tax credit only for curricular materials and educational supplies as provided by law.
(8) Parents or legal guardians who send children to a non-public school that discriminates on the basis of race, ethnicity, color or national origin; advocates unlawful behavior, or teaches hatred of any person or group on the basis of race, ethnicity, color, national origin, religion, or gender; knowingly employs a person convicted of a crime involving lewd or lascivious conduct, or any offense involving molestation or other abuses of a child, shall not be eligible for this tax credit.
(9) Except as herein provided, neither the state nor any subdivision thereof shall use this section to increase its regulatory role over the education of children in non-public schools beyond that exercised and existent on January 1, 1998.
MARTINEZ, Justice, specially concurring:
The majority holds that petitioner Outcelt's appeal was timely filed because C.A.R. 26(a) excludes intervening weekends in calculating the five-day filing requirement of section 1-40-107(2), 1 C.R.S. (1997). See maj. op. at 1081. The majority also holds that the titles and summaries prepared by the Title Board are fair and accurate. See id. at 1083. I concur with both of these holdings. I disagree, however, with the majority's view that section 1-40-107(2) requires an appellant to file his or her appeal within five days of the Title Board's denial of a motion for rehearing. See id. at 1079-1081. In my view, the plain language of this section permits an appeal by an appellant whose motion for a rehearing has been overruled and who has requested a certified copy of the initiative's titles and summary, provided that the appeal is filed within five days of the secretary of state's furnishing of these certified copies. Accordingly, I do not join Part II.A of the majority opinion.

I.
Section 1-40-107(2) provides, in relevant part:
If any person who filed a motion for rehearing pursuant to subsection (1) of this section is overruled by the title board, then the secretary of state shall furnish such person, upon request, a certified copy of the petition with the titles, submission clause, and summary of the proposed law or constitutional amendment, together with a certified copy of the motion for rehearing and of the ruling thereon. If filed with the clerk of the supreme court within five days thereafter, the matter shall be docketed as a cause there pending....
(Emphasis added.) It is undisputed that Outcelt filed this appeal within five days of obtaining the certified copies of the petition, titles and summary, from the secretary of state. Thus, it would appear that Outcelt filed his appeal in the time period prescribed by the statute, regardless of the effect of C.A.R. 26(a) on this filing requirement.
The majority holds, however, that section 1-40-107(2) requires one to file an appeal within five days after the Title Board denies the motion for rehearing. See maj. op. at 1081. I disagree.

II.
In construing a statute, a court must look to the language of the statute, giving effect to each word and phrase using commonly accepted meanings. See San Miguel County Bd. of Equalization v. Telluride Co., 947 P.2d 1381, 1384 (Colo.1997). If a court can give effect to the ordinary meaning of the *1088 words and phrases adopted by the General Assembly, the statute must be construed as written, "since it may be presumed that the General Assembly meant what it clearly said." PDM Molding, Inc. v. Stanberg, 898 P.2d 542, 545 (Colo.1995); see Gonzales v. Advanced Component Sys., 949 P.2d 569, 574 (Colo.1997). Thus, the limiting principles of judicial review require a court to interpret language consistently with legislative intent and with the plain meaning of the words chosen in the statute. See Swieckowski v. City of Fort Collins, 934 P.2d 1380, 1387 (Colo.1997).
Applying the limiting principles of judicial review to section 1-40-107(2), I find that the statute's meaning is unambiguous. The first sentence of subsection (2) requires the secretary of state to furnish certified copies of various documents to any person who requests them after his or her motion for rehearing has been denied by the Title Board. See § 1-40-107(2). The second sentence provides that, "[i]f filed with the clerk of the supreme court within five days thereafter," an appeal to this court is timely. Id. (emphasis added). Hence, the filing deadline described by subsection (2) depends upon the import of "thereafter" in the second sentence.
"Thereafter" means "after that." Webster's Ninth New Collegiate Dictionary 1223 (1989). Thus, the use of the term "thereafter" in the opening clause of the second sentence of subsection (2) begs the questions, "after what?" or "after what event or act?" The primary event or act described by the first sentence of subsection (2) is the secretary of state's furnishing of certified copies to one who requests them. Thus, the logical import of "thereafter" in the second sentence of subsection (2) is "after the secretary of state furnishes the requested certified copies."
As the United States Supreme Court has explained, "This Court naturally does not review congressional enactments as a panel of grammarians; but neither do we regard ordinary principles of English prose as irrelevant to a construction of those enactments." Flora v. United States, 362 U.S. 145, 150, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). Accordingly, I believe the plain meaning of the statute's language and ordinary rules of grammar render the statute's meaning unambiguous. Under section 1-40-107(2), an appeal is timely if filed within five days of the secretary of state's furnishing of certified copies to one who requests them.
The majority concludes that the denial of a motion for rehearing is the operative act from which to calculate the five day filing requirement. See maj. op. at 1081. This interpretation of the statute asserts that "thereafter," contained in the opening clause of the second sentence of subsection (2), refers to "overruled by the title board," contained in the introductory clause of the first sentence, thus ignoring the natural grammatical flow of subsection (2). "Legislative words and phrases in a statute should be given their plain and ordinary meanings, and a forced, subtle, or strained construction should be avoided if the language is simple and the meaning is clear." Grogan v. Lutheran Med. Ctr., Inc., 950 P.2d 690, 691 (Colo.App.1997) (citations omitted).[1]
Where the language of a statute is plain and unambiguous, "we do not reach beyond that language to determine intent." Colorado State Bd. of Accountancy v. Zaveral Boosalis Raisch, 960 P.2d 102, 107 (Colo. 1998); see Mason v. People, 932 P.2d 1377, 1380 (Colo.1997). Contrary to this rule of statutory construction, the majority reaches beyond this statute's plain and unambiguous language and seeks support for its holding in public policy arguments. See maj. op. at 1080-1081.
The majority explains that the statute does not specify any time frame in which the appellant must request the certified materials from the secretary of state or in which the secretary of state must furnish them. *1089 See id. at 1080-1081. Thus, the majority determines that interpreting section 1-40-107(2) to create a filing deadline that depends upon one requesting and obtaining certified copies from the secretary of state would delay the appeals process indefinitely. Such an indefinite delay, the majority asserts, "would entirely defeat the legislative objectives of finality of Board action and an expedited procedure in the event of an appeal." Id. at 1080. Consequently, the majority declines to adopt this interpretation of section 1-40-107(2). See id. at 1081.
I agree that this interpretation of the statute may allow appellants or the secretary of state to affect, perhaps greatly, the initiative process. However, we are not empowered to ignore the plain meaning of statutory language. Rather, we must enforce a statute as written. "If this does not correspond to the General Assembly's intent, it is for that body, not this court, to rewrite it." Dove Valley Bus. Park Assocs., Ltd. v. Board of County Comm'rs, 923 P.2d 242, 248 (Colo.App.1995).
Furthermore, the facts of this case are not an example of the evils the majority seeks to prevent. Outcelt requested the certified materials within one day of the Title Board's denial of his motion for rehearing. The secretary of state supplied the certification within two business days of this request. Outcelt filed his appeal within two business days of receiving the certified materials. Thus, neither of the parties who possess the power to hinder the initiative process exercised that power here. The parties expeditiously carried out their duties in a manner consistent with an efficient initiative process.
Therefore, we are not faced with the question of what consequences attach to the dilatory behavior of either the secretary of state or an appellant. In such a situation, this court may decline to sanction a party's deliberate attempt to frustrate the initiative process, or a party's inexcusable neglect with respect to pursuing an appeal. We are not presented with either scenario today.
Additionally, the majority implies that an appellant may file his or her appeal before receiving the certified materials from the secretary of state. See maj. op. at 1081. The majority suggests that, in such a case, we may hold the appeal in abeyance pending the availability of the certified materials. See id. (citing In re Proposed Initiative on Education Tax Refund, 823 P.2d 1353, 1356 (Colo.1991)). Thus, the majority recognizes that, before the secretary of state furnishes certified copies of these materials, an appellant may not possess a copy of the denial of the motion for rehearing or of the initiative's titles and summary as amended by the Title Board as a result of the rehearing motion.
Yet, the majority holds that an appellant may be required to file his or her appeal prior to receiving the certified materials. The majority's holding, therefore, rests on the unusual notion that an appellant's ability to make an informed decision about whether to pursue an appeal will not be affected by the fact that the appellant does not possess the materials that form the basis for the appeal. I disagree. In my view, an appellant is not required to file an appeal before he or she has access to the materials and the ruling of which he or she seeks review.
For the foregoing reasons, I do not join the majority's interpretation of section 1-40-107(2). I would hold that an appeal is timely under the statute where the appellant files an appeal within five days of the secretary of state's furnishing of the certified materials.

III.
I join the majority in applying C.A.R. 26(a) to section 1-40-107(2), and upholding the titles and summaries set by the Title Board. In my view, however, the plain, unambiguous language of section 1-40-107(2) allows an appeal that is filed within five days of the secretary of state's furnishing of the requested certified materials to the appellant. Therefore, I do not agree with Part II.A of the majority opinion.
KOURLIS, J., joins in this special concurrence.
SCOTT, Justice, dissenting:
The right subject to our review here is that of the citizen initiative, guaranteed and reserved to the people by our Colorado Constitution. Colo. Const. art. V, § 1(2). Its *1090 importance is evinced by the fact that it was the "first power reserved by the people." Id. The interest the majority protects today is not that right, but rather the ability of others to challenge the exercise of the "first power."
In any event, ignoring even the constitutional limitations placed upon our construction of section 1-40-107(2), 1 C.R.S. (1997), the legislative declaration of our General Assembly makes clear that:
[I]t is not the intention of [section 1-40-107(2)] to limit or abridge in any manner the powers reserved to the people in the initiative and referendum, but rather to properly safeguard, protect, and preserve inviolate for them these modern instrumentalities of democratic government.
§ 1-40-101, 1 C.R.S. (1997).
Section 1-40-107(2) provides that any appeal to the supreme court may be filed by "any person who filed a motion for a rehearing" so long as that motion is "overruled by the title board" and if it is "filed with the clerk of the supreme court within five days thereafter." While I agree with the majority that section 1-40-107(2) "requir[es] a person to appeal the Board's action in fixing the titles and summary within five days after the Board overrules that person's rehearing motion," maj. op. at 9-10, I find the majority's resort to C.A.R. 26(a) to exclude Saturdays, Sundays, and legal holidays when calculating the time period for initiating an appeal under the statute contrary to the proponent's right of initiative. That is, the majority's approach does not "safeguard, protect, [nor] preserve inviolate" the right of citizen initiative, all contrary to modern precepts of democratic government. Consistent with the legislative declaration, because any limitation upon the power of initiative should be strictly construed so as to permit the full exercise of the initiative right, the principal challenge to any measure should be through the ballot box and not through unlimited review by this court. Accordingly, I would dismiss Outcelt's appeal as untimely filed.

I.
We recently held: "In the absence of ... statutorily conferred jurisdiction, the courts are forbidden from interfering with the referendum process before [a] measure has been adopted." Polhill v. Buckley, 923 P.2d 119, 121 (Colo.1996). Likewise, the five-day period for appeal to this court should be read in a manner consistent with the expressed legislative intent, see § 1-40-101, and without altering the democratic principles secured by the power of initiative. Thus, consistent with constitutional status of the right of initiative and the legislative declaration, I would not enlarge the time for appeals.
The majority, however, relies upon C.A.R. 26(a) to enlarge the period of appeal for Outcelt. C.A.R. 26(a) provides that intermediate Saturdays, Sundays, and holidays are not counted when a filing requirement allows less than seven days:
In computing any period of time prescribed by these rules, by an order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period shall be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period extends until the end of the next day which is not a Saturday, Sunday or a legal holiday. When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.

(Emphasis added.) Here, the Title Board denied Outcelt's petition for rehearing on Wednesday, April 1. If the following Saturday and Sunday are excluded from the time computation, the fifth day following the Title Board's action would have been Wednesday, April 8, the day on which the appeal was filed.[1]
*1091 We have previously stated that "one seeking to exercise a statutory right of review must comply with the procedures prescribed," and that the "failure to exercise a statutorily provided right of review within the applicable time limit is a jurisdictional defect, mandating dismissal." State Dep't of Revenue, Motor Vehicle Div. v. Borquez, 751 P.2d 639, 644 (Colo.1988). Although this court may adopt rules of procedure for the regulation of court business, it should not "adopt a rule which changes jurisdiction of a court contrary to a provision of a statute." Bill Dreiling Motor Co. v. Court of Appeals, 171 Colo. 448, 455, 468 P.2d 37, 41 (1970). While I recognize that C.A.R. 26(a) also refers to "any applicable statute" in computations extending time under the rule, I believe we must read the rule consistent with both the constitutional rights at issue and the legislative declaration of purpose. When the foregoing are taken into consideration, section 107(2) sets forth a plain five-day time limit as part of a special statutory proceeding which our rule of appellate procedure is not intended to alter.[2]
Outcelt could have filed a timely appeal on Monday, April 6, the same day that the secretary of state made the certified documents available. However, he did not elect to do so. Instead, he waited two more days and, thus finds himself in the position of urging interpretations which would delay finality of Title Board actions and require us to disfavor certainty and expediency in the filing of appeals, contrary to legislative intent and our decisions recognizing the importance of the initiative process.

II.
Here, in my view, we are without jurisdiction to entertain Outcelt's appeal and, therefore, his appeal should be dismissed as untimely filed. Because I would find any discussion of the merits of Outcelt's petition beyond our jurisdiction of review, I would not address the merits of his petition and, having so reasoned, then, do not discuss the same here.
NOTES
[1] The title, ballot title and submission clause, summary, and initiative are attached to this opinion as Appendix A.
[2] While it is true that the statute interpreted by this court in McPherson sets forth a list of objects, the plain language of the McPherson rule of statutory construction refers only to the last antecedent of qualifying words and phrases, and does not limit itself to lists of objects or items. In fact, neither of the two cases we cited in McPherson in support of this rule of statutory construction dealt with such lists. See Moschetti v. Liquor Licensing Auth. of the City of Boulder, 176 Colo. 281, 490 P.2d 299 (1971); Wheeler v. Rudolph, 162 Colo. 410, 413-14, 426 P.2d 762, 763 (1967).
[3] In this case, for example, the proponents have until August 3, 1998, to collect and file with the secretary of state sufficient signatures to have the initiative placed on the November 1998 general election ballot. See Colo. Const. art. V, § 1(2).
[4] Identical arguments regarding the interpretation of section 1-40-107(2) and the application of C.A.R. 26(a) were made to this court in a motion to dismiss in In re Proposed Initiative on Sch. Pilot Program, 874 P.2d 1066 (Colo.1994). We summarily denied the motion to dismiss, and did not address these arguments in our opinion. We now articulate that C.A.R. 26(a) is applicable in such cases.
[1] I do not view the rule of People v. McPherson, 200 Colo. 429, 432, 619 P.2d 38, 40 (1980), even if it remained viable today, as instructive in interpreting the statute before us because the rule relates to a statutory sentence which sets forth a list of objects or items. Conversely, section 1-40-107(2), using various dependent clauses between two sentences, describes a sequence of actions.
[1] Federal courts generally apply Federal Appellate Rule 26(a) in computing the time governing the filing of a notice of appeal. See, e.g., United States v. Feldman, 1992 WL 350629 (S.D.N.Y. 1992); see also F.R.A.P. Rule 26(a). I note, however, that those cases are distinguishable for two reasons. First, those cases do not involve the right of citizen initiative, and second, the interest protected there is that of the petitioner and, not as here, the respondent. That is, in those cases, considerations of liberality and leniency are designed to benefit the holder of the right to be protected. Here, however, the right of the initiative is intended to benefit the proponents of initiative # 62 and not Outcelt, the petitioner. Accordingly, the five day limitation provided in section 1-40-107(2) should be strictly construed to include Saturdays, Sundays, and legal holidays. I also note that section 1-40-107(2) was enacted after C.A.R. 26(a) and, therefore, in accordance with our rules of statutory construction, the statute should take precedence over the rule. See Public Employees Retirement Ass'n v. Nichols, 200 Colo. 328, 615 P.2d 657, 658 (Colo.1980) (to the extent that there is a conflict between statutes enacted at different times, last in time controls).
[2] If the court is not open for business on the fifth day, the appeal may be filed on the next business day under C.A.R. 26(a). This construction of the statute and our rule harmonizes the two, rather than placing them in conflict.