**PROPERTY ASSET BROKERAGE, LLC, Plaintiff–Appellee,**

v.

**MAGNA ASSOCIATES LIQUIDATING TRUST, Defendant–Appellant.**

No. 97CA2256.

Colorado Court of Appeals, Div. III.

July 8, 1999.

Certiorari Denied Jan. 24, 2000.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Darrell G. Waas, Patricia C. Campbell, Denver, Colorado, for Plaintiff–Appellee.

Senn Lewis Visciano & Strahle, P.C., Frank W. Visciano, Luis A. Toro, Denver, Colorado; Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado, for Defendant–Appellant.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, David I. Marsh, Senior Assistant Attorney General, Denver, Colorado, for Amicus Curiae Colorado Real Estate Commission.

Rothgerber Johnson & Lyons, LLP, Richard K. Clark for Amicus Curiae Colorado Association of Realtors and Denver Metro Commercial Association of Realtors.

Opinion by Judge JONES.

Defendant, Magna Associates Liquidating Trust (Magna), appeals from an order entering partial summary judgment in favor of plaintiff, Property Asset Brokerage, LLC (broker), and denying Magna's cross-motion for partial summary judgment. We affirm.

In May 1995, the broker and Magna entered into a brokerage agreement whereby it was agreed that the broker would act as the exclusive listing agent for the sale of condominium units owned by Magna. The agreement was structured with a one-year term and provided for two automatic renewal periods.

Approximately one year later, in June 1996, Magna terminated the agreement and retained the services of another broker. In terminating the agreement, Magna relied on § 12–61–809(1), C.R.S.1998.

The broker subsequently filed suit, asserting numerous claims against Magna and its trustee. These included a claim for declaratory judgment which sought an interpretation of the meaning and intent of § 12–61–809(1) and a determination of the statute's applicability to the brokerage agreement at issue. The parties filed cross-motions for partial summary judgment on the declaratory judgment claim and stipulated to a stay of all proceedings pending the trial court's ruling. The trial court granted the broker's motion and denied Magna's motion. The trial court certified its order as final pursuant to C.R.C.P. 54(b) and stayed all proceedings pending this appeal.

The sole issue on review is whether § 12–61–809(1), which governs the duration of real estate brokerage relationships, requires all brokerage agreements to terminate at the end of one year.

Section 12–61–809(1) provides, in pertinent part:

(a) The relationships set forth in this part 8 shall commence at the time that the broker is engaged by a party and shall continue until performance or completion of the agreement by which the broker was engaged.

(b) If the agreement by which the broker was engaged is not performed or completed for any reason, the relationship will end at the earlier of the following:

(1) Any date of expiration agreed upon by the parties

(2) Any termination or relinquishment of the relationship by the parties; or

(3) One year after the date of the engagement.

Both parties agree that the language of the statute is unambiguous. Magna argues that this statute mandates that all brokerage agreements automatically terminate at the earlier of the termination date agreed upon by the parties, or one year. The broker, on the other hand, argues that the statute does not automatically terminate brokerage agreements after one year. It asserts that the terms of an agreement govern the duration of the relationship between the parties, and that such agreement, under certain circumstances, could continue beyond one year in duration. We agree with the broker's interpretation of the statute.

■ Because statutory construction involves a question of law, the trial court's judgment is subject to independent review by an appellate court. *Fogg v. Macaluso*, 892 P.2d 271 (Colo.1995).

■ In construing this statute, our primary task is to discern the intent of the General Assembly. In ascertaining that intent, we must give words and phrases effect according to their plain and ordinary meanings, and a statute should be interpreted in such a way as to give sensible effect to all of its parts. *City of Westminster v. Dogan Construction Co.*, 930 P.2d 585 (Colo.1997). As relevant here, when legislative language is unambiguous, we give effect to the plain and ordinary meaning of the statute without resort to other rules of statutory construction. *In re Title, Ballot Title & Submission Clause, & Summary for 1997–98 No. 62*, 961 P.2d 1077 (Colo.1998).

Section 12–61–809(1) sets forth guidelines for determining the duration of relationships between brokers and parties. The language of the statute indicates that duration of the relationship turns on whether there is "completion or performance of" the agreement by which the broker was engaged. If the agreement is performed or completed according to the terms of the parties' agreement, then the duration of the relationship is governed by § 12–61–809(1)(a), C.R.S.1998. In such a cir-

cumstance, the relationship continues until the earlier of either completed performance or expiration of the termination date set forth in the agreement.

■ As used in § 12–61–809(1)(a), the common meaning of the word "performance" is "something accomplished" or "carried out," *Webster's Third International Dictionary* 1678 (1986), while "completion" is defined commonly as "the quality or state of being completed." "Complete" means "to bring to an end ... or a finished state." *Webster's Third International Dictionary* 465 (1986). Thus, in the phrase "until performance or completion of the agreement," the word "or" is not being used strictly disjunctively as indicating an alternative between different things. Rather, the General Assembly has used the word "or" as "a function word to indicate the synonymous, equivalent, or substitute character of two words or phrases...." *Webster's Third International Dictionary* 1585 (1986).

Applying these common definitions to the statute, we conclude that the statute dictates that the relationship referred to continues until completion of performance during the term of the agreement between parties.

■ If, for any reason, there is not completion of performance under the agreement by which the broker was engaged according to the terms of the parties' agreement, the duration of the relationship is governed by § 12–61–809(1)(b), C.R.S.1998. In such circumstances, the relationship ends at the earliest of either the date of expiration agreed to by the parties, the termination or relinquishment of the relationship by the parties, or the passage of one year from when the agreement became effective.

In seeking to persuade us to construe § 12–61–809(1) as requiring all brokerage agreements to terminate at the end of one year regardless of the intent of the parties, Magna fails to give effect to both § 12–61–809(1)(a) and § 12–61–809(1)(b). Indeed, had the General Assembly specifically intended to limit all brokerage agreements to one year, it certainly could have included unqualified language to that effect. Instead, the General Assembly made clear, through the plain lan-

guage of the statute, that the one-year limitation applies only to those agreements as to which there has not been completion of performance in accordance with their terms.

Although not necessary to our analysis of the statute at issue, we, nonetheless, note that three other states that have similar statutes and for identical purposes to § 12–61–809(1), C.R.S.1998, present the same requirements as those set forth here. *See* Ga.Code Ann. § 10–6A–9(a)(1993); Idaho Code § 54–2069 (1996); Wash. Rev.Code § 18.86.070 (1997).

In each of the referenced statutes, completion of performance defines the relationship. Only in the absence of completion of performance within the terms of the agreement do statutory alternatives apply. Thus, in each statute the alternative subsections can meaningfully be read together to give logical scope to the broker agreement that is the subject of each.

Here, because performance had begun, and was continuing, but had not yet been completed at the end of the first anniversary of the agreement, the automatic renewal provisions of the agreement went into effect, so that completion of performance was still capable of being achieved under the terms of the parties' agreement. Hence, § 12–61–809(1)(a) is controlling.

Thus, we agree with the trial court's conclusion that the listing contract between the broker and Magna did not automatically terminate after one year, and that the three-year term of the contract is valid and enforceable.

The partial summary judgment entered in favor of the broker is affirmed.

Chief Judge HUME and Judge ROY concur.